CASE 24—ACTION TO RECOVER MONEY PAID AS TAXES—DEC. 5.

# Commonwealth for Wiggins, &c. v. Scott, &c.

APPEAL FROM FLEMING CIRCUIT COURT.

JUDGMENT FOR DEFENDANTS AND PLAINTIFF APPEALS. REVERSED.

PARTIES TO ACTIONS—PERSONS HAVING COMMON INTEREST—ACTION BY
ONE FOR BENEFIT OF ALL—AMOUNT IN CONTROVERSY—APPELLATE
JURISDICTION.

Held: 1. One of a large number of taxpayers from whom a tax
has been illegally collected, may sue for the benefit of all, to
recover the sums paid, though he be a non-resident of the
county, and the other persons for whose benefit he sues, be
residents of the county.

2. The amount in controversy, in such an action, both in the trial
court and for the purpose of an appeal by plaintiff, is the
entire trust fund sued for, and not merely the amount of the
plaintiff's share of the fund. Oswald v. Morris, 92 Ky., 48,
is overruled.

WINFIELD BUCKLER, ATTORNEY FOR APPELLANTS.

The name of M. F. Daugherty was improperly stricken out
of the petition. The petition alleges he collected, as deputy
sheriff, a large amount of these illegal taxes, and that they

are yet in his hands and he holds this as a trust fund for the benefit ·of the taxpayers who contributed that fund, and this is a proceeding *in rem* to recover that trust fund, rather than *in personam* against Daugherty.

It is true that by an express provision of the statute, the sheriff, and his sureties, are made responsible for the failure of his deputy to perform his duty to the party injured; but neither that law, nor any other known to this court, takes from a party the right to waive his remedy against the principal and bring an action against the deputy for breach of a direct covenant to the party suing.

The petition shows the sheriff and deputy to be joint tort feasors. The former, because he commanded the act to be done,_ and the latter because he did the act. ,But whether we consider Daugherty as an indifferent stakeholder of the fund in litigation, or as a joint tort-feasor, it is quite evident he is ·a necessary party defendant to the final determination of this suit.

We submit:

(1)   That appellant Wiggins has a right to sue for himself and other taxpayers. Whaley v. Com., 61 S. W., 35; ·Pomeroy's Eq. Jurisprudence, sec. 270; Randolph v. Lampkin, &c., 90 Ky., 556.

(2)   The name of M. F. Daugherty, the deputy sheriff, was improperly stricken out of the petition. Am. & Eng. Ency., vol. 9, (2d ed.) 388, 389, 393; Same, vol 1 (2d ed.) 1130; Paul v. Atkisson, 1 Dana, 112; Mechem on Public Officers, sec. 694; Anderson's Law Dictionary, 388.

(3)   The demurrer to the petition was erroneously sustained, because:

(a)   The sureties' liabilities are coextensive with the official acts of the sheriff. Forsythe v. Ellis, 4 J. J. Mar., 298; State of Indiana v. Gobin, 94 Fed. Rep., 50 Mechem on Public Officers, sec. 682.

(b)   *The illegal collection of taxes is an official tort and sureties liable.* Mechem on Public Officers, sec. 772; State v. Shacklett, 5 Am. Law Rep., 664; Shields v. Pflanz, 101 Ky., 407; Brown v. Weaver, 71 Am. St., 517; Freeman on Executions, vol. 2, p. 253, 254; Com. for use, &c., v. Stockton, 5 Mon., 193; Am. & Eng. Ency., vol. 2 (1st ed.) 466, note; Same, vol. 25 (1st ed.) 478; Mechem on Public Officers, sec. 284; Pringley on Suretyship, sec. 324; Clancy v. Lenworthy, 74 Iowa, 743.

(4)   The sureties are liable for taxes actually collected by sheriff on void process.    Throop on Public Officers, sec. 289,

290; Cooley on Taxation, sec. 705; Pringley on Suretyship, &c., sec. 337.

JOSEPH H. POWER, G. A. CASSIDY, ATTORNEYS FOR APPELLEE, W. D. SCOTT.

This suit was instituted by Arris Wiggins claiming to represent himself and all the taxpayers in Fleming county, in which he is claiming that certain taxes were illegally levied and collected in said county, from him and others. His individual taxes amounting to abount $11.00.

A demurrer was sustained to his petition on the ground that the court has no jurisdiction over the subject matter in controversy.

(1)   He does not allege that any taxpayer, except himself, desires the prosecution of this suit, or that any one else, except himself and his attorney, is actively interested therein.

(2)   The petition on its face shows no equity in him, and no right to maintain the suit on the ground that the parties interested are numerous, and that it would be impracticable to bring them all before the court.

(3)   The petition does not show that the court has jurisdiction of the subject matter.

(4)   It is in the discretion of the court, when a suit of this kind is brought, to see whether or not the party proceeding, fairly represents the parties he claims to represent.

(5)   He fails to show that he has procured an order from the circuit court authorizing him to prosecute this suit in his name for the benefit of others, either on the ground of a common interest or of multiplicity of parties.

(6)   While the suit is on the equity side of the docket there is really no equity in his bill, but the action is really an action at law against W. D. Scott and his sureties.

On the whole case we insist that the appellant, Wiggins, has shown no common or general interest in the matters in controversy in this suit, and therefore that the court below had original jurisdiction of the matter in controversy, and that this court has no appellate jurisdiction of same and that this appeal should be dismissed.

## AUTHORITIES.

Civil Code, sec. 25; Am. & Eng. Ency. of Practice, vols. 15, 643, 644, 645; 116 Mass., 510; Smith v. Swarmsteddt, 16 Howard, 303; Bardstown & Louisville R. R. Co. v. Metcalf, 4 Metc., 204; Whaley v. Com., 61 S. W., 35; Oswald v. Morris, 92 Ky., 48; Ky. Statutes, sec. 4147; Clay v. Nicholas Co., 4 Bush, 154; Blair

Commonwealth for Wiggins, &c. v. Scott, &c.

v. Turnpike Co., 4 Bush, 157; Rich, &c., v. Lambert, &c., 53 U. S. 1017 (12 Howard) Gibson v. Shufeldt, 122 U. S., 1083.

J. B. CUMBER, J. H. POWER, G. A. CASSIDY, W. G. DEARING AND JOHN P. McCARTNEY, FOR APPELLEES.

The record shows as follows: The defendants came by their attorneys and moved the court to strike from the petition in equity, the name of M. F. Daugherty who is alleged to be a deputy sheriff, for the reason that said deputy sheriff is not responsible in said action if there should have been misconduct on his part by reason of the improper collection of the tax; which motion was sustained by the court.

The defendants then moved to strike from the petition the words: "The Commonwealth of Kentucky who sues for the use and benefit of all the tax payers of Fleming county" as plaintiff in said petition; which was sustained by the court.

The defendants then moved the court to strike from the petition the name of "Arris Wiggins for use of all taxpayers of Fleming county," which was sustained by the court, thus leaving Arris Wiggins suing through the Commonwealth and by himself, only, as plaintiffs. The defendants, W. D. Scott and Fleming county then filed their special demurrer to the petition and amended petition on the ground that Arris Wiggins alone suing by the Commonwealth for himself for an amount less than the jurisdiction of the circuit court (Wiggins entire taxes being less than $11.00), which motion was sustained by the court, and the plaintiff declining to plead further, his petion was dismissed from which judgment he appeals.

### AUTHORITIES CITED.

Motion to strike the name of M. F. Daugherty. Kentucky Statutes, secs. 4141, 4561; Harlan v. Lumsden.

Motion to strike names of Commonwealth and Arris Wiggins for use of tax payers of Fleming county other than Wiggins. Gatewood v. Lyle, 5 Mon., 6; Thomas v. Thomas, 3 Littell, 8; Oswald v. Morris, &c., 92 Ky., 48, 54; Gibson v. Shufeldt, 122 U. S., 1085; Smith v. Swarnsteddt, 57 U. S., 948.

### SUPPLEMENTAL BRIEF FOR APPELLEES.

This court, in Whaley v. Com., 61 S. W., 35, has made a ruling to the effect that one taxpayer may, on behalf of himself and others, without naming the others, bring suit for the recovery of a tax alleged to be illegal, and refer the case to a master commissioner, for the purpose of collecting the whole tax and distribute it among the various taxpayers.

In our judgment, section 25, Civil Code, has reference only to cases where a number of persons, either jointly or one for all, sue either to prevent some injury or disadvantage to them as a body or to obtain some advantage, or recover something which belongs to or would benefit them as a body, to be held in trust or for their collective benefit, where the benefits accrue to all alike. In such cases there is a community of interest.

In the case at bar, the interests are different and divergent. Wiggins is a non-resident of the county, owning a small tract of land in the county. Not living in the county, and deriving no personal benefit from the free turnpike system, his attitude is different from that of those who reside in the county. In what sense, therefore, does Wiggins, who does not live in the county, allege a common interest with the citizens of the county and sue for their benefit without showing or alleging some authority from them to do so.

### ADDITIONAL AUTHORITIES.

City of Louisville v. Zanone, 1 Metc., 153; City of Henderson v. Breckinridge, 3 Ky. Law Rep., 737; Pomeroy's Remedies, sec. 300; Shufeldt v. Gibson, 122 U. S., 27; L. & N. R. R. Co. v. Hopkins, 87 Ky., 613; Blair v. Carlisle, &c., T. P. R., 4 Bush, 167; Lewis, &c., T. P. v. Thomas, 8 Ky. Law Rep., 872; Com., for use, &c. v. Tilton, &c., 21 Ky. Law Rep., 1079.

OPINION OF THE COURT BY JUDGE O'REAR—REVERSING.

This case involves questions similar to those had under consideration by the court in Whaley v. Com., 110 Ky., 154; 23 R., 1292; 61 S. W., 35. The main point of difference is (if it is a point of difference) that the taxpayer who essays to sue for all the taxpayers of Fleming county, to recover the illegal tax levied and collected of them all, is not a resident of Fleming county. He, however, owns land in Fleming county, which was assessed for a portion of the illegal tax, and paid his proportion of it. It is argued that he is not a fair representative of the class of taxpayers whom he assumes to represent, and that his interests are not identical with those who are resident in Fleming county; that, therefore, he did not have the right to sue for himself and all others in this

joint action; and that, as his part of the illegal tax collected was shown by the petition to be less than $50, the circuit court had no jurisdiction of his action.    Entertaining this view, that court sustained a special demurrer to the petition, and dismissed the action for want of jurisdiction of the subject-matter.

Although this court has heretofore had before it, and has, apparently, determined the question presented, in other actions than the Whaley case, a reconsideration of the principle of law involved has been so earnestly pressed upon us in the able arguments with which we have been favored at bar that we have concluded to re-examine the question, the reasons underlying it, and the authorities upon which it is based.    And, for the purposes of this opinion, we will ignore the fact of the decision in the Whaley case.

Text writers and courts have had frequent occasion to analyze the character of proceeding here involved, and have, with general unanimity, brought it within that ancient rule of equity that its jurisdiction exists in order to prevent a multiplicity of suits concerning the same subject-matter, as affecting the same litigants or the same title. They find that the subject-matter is the tax levy, or, when collected, the fund arising from such levy.    He who has collected or who holds it, or who is asserting the lawful right to collect it, is one of the necessary parties to the controversy; and, when collected, the fund is called and treated as a trust fund, the beneficiaries of which are all who contributed to it.    They, consequently, are the other necessary party to the litigation for its recovery.    Thus, in this State, in Blair v. Turnpike Co., 4 Bush, 157, it was expressly held that the "sheriff of Nicholas county holds

the money collected by illegal taxation on a void subscription to turnpikes as a trust fund for the benefit of the taxpayers who contributed to that fund." Here we see that this court as early as 1868 classified facts precisely analogous to those in the case at bar thus: The taxes illegally collected are a trust fund; the sheriff collecting and holding them is the trustee; and the taxpayers who contributed them, the *cestuis que trustent*. In nearly every such instance (and certainly it is so in this case) the number of taxpayers so contributing is considerable,—probably several thousand in number. It is manifest, therefore, that to allow each of them to maintain a separate action for the part paid by him would be to involve the collecting officer, or the county, if the money has been paid over to the county, in innumerable litigations, the greatest hardship of which would be the enormous sum of costs necessarily thus imposed. It would be also to give courts of different jurisdictions (that is, the circuit court in some instances, and quarterly, justices,' and police courts in others) simultaneous and concurrent jurisdiction over litigations involving the right to, and the appropriation of some parts of, the same general trust fund. Intolerable confusion, inequality in results, and vast opportunity for whimsical, ignorant, or tyrannical action, affecting many of the smaller interests, would ensue. Uncertainty, inequality, irregularity, and other evils of miscarried justice would be a probable result. It is equally manifest that it is absolutely impracticable to make all these taxpayers parties plaintiff. Numerous reasons at once suggest themselves to the mind, among which may be stated: (a) It is entirely probable that many of these claimants are laboring under one form or other of legal disability, requiring tedious and expensive preliminary steps to be taken, under the provi-

Commonwealth. for Wiggins, &c. v. Scott, &c.

sions of our Code, before the action could be brought or proceeded with; (b) during the preparation, deaths requiring revivors, with consequent necessary delays, would amount to practically a perpetual postponement of the trial.    A denial of justice must result.    Such was the experience of the early practitioners and jurists, and such has been the conclusion of the thoughtful investigators of the bench and bar on this subject from that early time.    It is true, arguments have been made against the practice,— the same arguments so earnestly and zealously presented on this hearing.    But it will be noted that these arguments emanate from those whose interest and effort it is to defeat the action; to defeat the recovery; to defeat all recovery of their client.    From that standpoint it is not criticised.    But the courts must look beyond this position. They can not be satisfied with considering merely reasons why it should not be done, but must look also to those why it should be.    Conceded, a tax wrongfully levied and collected of a community, in violation of the Constitution. The citizen has paid it promptly, it being mingled with legal taxes, which should be paid promptly that government might be supported.    The sum of such illegal tax is in the hands of the collector or the county court.    The citizens who paid it, not the municipality nor the collector, are entitled to it.    Question for the courts:  How to quickly, justly, inexpensively, restore to the citizen his own?    Now, if either form or substance of right must be sacrificed, or one made to conform to the other, will the courts, in this day of practical action, hesitate as to which will be made to yield?    As justice is the end, and the procedure the means, we may well regulate the latter to attain to the former.    So much thus briefly for the reasons, independent of authority, supporting the principle.

The practice has been so long allowed and so frequently applied that it would be a well-nigh endless task to enumerate all, and consider each of the authorities. We may fairly assume that their spirit has been crystallized in the texts of those writers whose reputations and services entitle their utterances to the general respect paid them by the courts of the land. High among such are Cooley and Pomeroy. The latter in his monumental treatise on Equity Jurisprudence, has with admirable skill and perspicuity collated the decisions on this subject, classifying them so as to present the view of the growth and application of this branch of equity jurisdiction into a system consistent, and well-nigh universal in this country in its application.

In section 269 the learned author says: "The jurisdiction, based upon the prevention of a multiplicity of suits, has long been extended to other cases of the third and fourth classes, which are not technically 'bills of peace,' but 'are analogous to,' or 'within the principle of,' such bills. Under the greatest diversity of circumstances, and the greatest variety of claims arising from unauthorized public acts, private tortious acts, invasion of property rights, violation of contract obligations, and notwithstanding the positive denials by some American courts, the weight of authority is simply overwhelming that the jurisdiction may and should be exercised either on behalf of a numerous body of separate claimants against a single party, or on behalf of a single party against such a numerous body, although there is no 'common title' nor 'community of right' or of 'interest in the subject-matter,' among these individuals, but where there is, and because there is, merely a community of interest among them in the questions of law and fact in-

volved in the general controversy, or in the kind and form
of relief demanded and obtained by or against each indi-
vidual member of the numerous body.  In the majority of
the decided cases, this community of interest in the ques-
tions at issue and in the kind of relief sought has originat-
ed from the fact that the separate claims of all the indi-
viduals composing the body arose by means of the same un-
authorized, unlawful, or illegal act or proceeding.  Even
this external feature of unity, however, has not always ex-
isted, and is not deemed essential.   Courts of the highest
standing and ability have repeatedly interfered and exer-
cised this jurisdiction where the individual claims were
not only legally separate, but were  separate  in  time, and
each arose from an entirely separate and distinct transaction,
simply because there was a community of interest among
all the claimants in the question at issue and in the rem-
edy.   The same overwhelming weight of authority effectu-
ally disposes of the rule laid down by some judges as a
test,—that equity will never exercise its jurisdiction to
prevent a multiplicity of suits unless the plaintiff, or each
of the plaintiffs, is himself the person who would neces-
sarily and, contrary to his own will be exposed to numer-
ous actions or vexatious litigation.  This position is op-
posed to the whole course of decisions in suits of the third
and fourth classes from the earliest period down to the
present time.   While the foregoing conclusions are sup-
ported by the great weight of judicial authority, they are,
in my opinion, no less clearly sustained by principle.   The
objection which has been urged against the propriety or
even possibility of exercising the jurisdiction, either on be-
half of or against a numerous body of separate claimants,
where there is no 'common title' or community 'of right' or
'of interest in the subject-matter' among them, is that a

single decree of the court can not settle the rights of all.
The legal position and claim of each being entirely distinct
from that of all the others, a decision as to one or some
could not in any manner bind and dispose of the rights
and demands of the other persons, and thus the proceed-
ing must necessarily fail to accomplish its only purpose,—
the prevention of further litigation.    This objection has
been repeated as though it were conclusive; but, like so
much of the so-called 'legal reasoning' traditional on the
courts, it is a mere empty formula of words, without any
real meaning, because it has no foundation of fact.    It is
simply untrue.    One arbitrary rule is contrived, and then
insisted upon as the reason for another equally arbitrary
rule.    The sole and sufficient answer to the objection is
found in the actual facts.    The jurisdiction has been exer-
cised in a great variety of cases where the individual
claimants were completely separate and distinct, and the
only community of interest among them was in the ques-
tion at issue, and perhaps in the kind of relief; and the
single decree has, without any difficulty, settled the entire
controversy, and determined the separate rights and obli-
gations of each individual claimant.    The same principle
therefore embraces both the technical 'bills of peace' in
which there is confessedly a common right or title or com-
munity of interest in the subject-matter, and also those
analogous cases over which the jurisdiction has been ex-
tended, in which there is no such common right or title or
community of interest in the subject-matter, but only a
community of interest in the question involved and in the
kind of relief obtained."    And in section 270 he says:
"Wherever, on the other hand, the taxpayers of a district
subject to an unlawful burden are regarded as having some
cause of action, as entitled to some judicial remedy,—as,

for example, where the individual taxpayer may maintain an action at law to recover back the illegal tax which he has paid or to recover damages,—there, in my opinion, all the reasons for exercising the jurisdiction to prevent a multiplicity of suits in any case of the third or fourth classes apply with great and convincing force in support of the same jurisdiction in behalf of such taxpayers."

Judge Cooley, in his work on Taxation (page 769), says: "When the supposed illegality in a tax proceeding affects a single person only, or affects him in a peculiar manner, distinguishing his case from that of others, he can not unite with others in a suit to restrain such proceeding. A joint bill by two or more parties, setting out distinct grounds on which each sought relief, would be dismissed as multifarious. But where the illegality extends to the whole assessment, or where it affects in the same manner a number of persons, so that the question involved can be presented without confusion by one bill filed by all or any number of those thus affected, there seems to be no sufficient reason why a joint bill should not be permitted. The reasons favoring it are that it avoids the necessity of a multiplicity of suits, and the attendant trouble and expense; and the objection that the interests of complainants are several is sufficiently met by the fact that complete justice may be done to all in one suit on the single issue, whereas, if the parties did not join, the same issue must be passed upon in separate suits brought by the several complainants. Although there has been some hesitation in sanctioning such bills, the weight of authority is decidedly in favor of supporting them, and this method of redress is now most commonly resorted to where the case is appropriate for it."

As supporting those texts, we find the opinions of the courts of last resort of at least twenty-two States of the Union, with practically none opposed; also many federal

courts upholding it. Section 25 of Civil Code of Practice of this State, which is substantially a re-enactment of section 37 of the former Code, recognizes and codifies this equitable practice. It is: "If the question involve a common or general interest of many persons, or if the parties be numerous and it is impracticable to bring all of them before the court within a reasonable time, one or more may sue or defend for the benefit of all." This court, in Hendrix v. Money, 1 Bush, 306, where the claimants of the property in litigation were about fifty in number, and where some were allowed to sue for all, said: "The persons interested in the object of the suit were so multitudinous as to have vexatiously prolonged and probably have altogether prevented a full hearing, unless, as was done by an order of court, a portion of them had been permitted to stand for all; and our Civil Code, as well as the modern common law, sanctioned the course adopted in this case." In Road Co. v. Ballard, 2 Metc., 165 (a case of numerous stockholders made defendants in a suit to subject corporate property); in Robinson v. Robinson's Trustee, 11 Bush, 177 (a case where all beneficiaries of a trust estate were not required to be made parties, but some to defend for all, and others to present their claims before the commissioner); in Railroad Co. v. Metcalfe, 4 Metc., 203, 81 Am. Dec., 541; in Claflin Co. v. Gibson, 21 R., 337; 51 S. W., 439 (an action by one of numerous independent creditors of an insolvent against the sureties on the bond of a receiver of the insolvent's estate; the court allowed one creditor to sue for all creditors in this one action, they being numerous); in Com. v. Tilton, 21 R., 1079; 54 S. W., 11; Id., 20 R., 1056; 48 S. W., 148 (an action by one taxpayer for all the taxpayers of Robertson county, in behalf of the county, against certain defaulting

fiscal officers in Road Co. v. Thomas, 8 R., 872; 3 S. W., 907 (an action by one of a few taxpayers of a district, in behalf of all, to restrain further illegal collection of a tax off the citizens and property of that district for the benefit of a turnpike road company); and in McCann v. City of Louisville (decided June 6, 1901), 23 R., 558; 63 S. W., 446,—this court has applied the principle herein discussed to the practice under section 25 of our Civil Code of Practice. In the case last cited (McCann v. City of Louisville) we held that, under the principles and section mentioned, the circuit court took jurisdiction of the whole controversy between a city which had collected illegal apportionment improvement warrants or taxes from numerous property holders whose lots abutted on the same street improved, upon the suit of one of such lot owners who had filed his suit for all others similarly affected by the vicious ordinance; and we in that action, and because such complete jurisdiction had attached, sustained a writ of prohibition against certain justices of the peace, prohibiting their proceeding with the trial of some 1,300 independent suits brought by that number of the affected taxpayers, respectively, against the city to recover their several and respective taxes so illegally paid. We rested that decision upon the grounds (1) that the action by one taxpayer for all gave the court jurisdiction of the whole subject-matter (the total fund so illegally collected) and all the parties (the city and each and every one of the taxpayers paying the illegal apportionment warrants); and (2) that the circuit court could and would do complete justice in the one action by caring for the rights of all; and (3) that the individual right of the one to maintain his own lawsuit must yield to the greater rights of all and the public, where its treasury and the common weal

were so affected. In applying the same principles of practice under section 25 of the Code of Civil Practice we are but following the unbroken line of decisions on this subject by this court from its earliest utterances, nearly a half century ago, till its latest, within a half year past, and are keeping in harmony with both the general drift and weight of authority on this subject elsewhere in the Union, and at the same time keeping well in view that spirit of the law that regards the ends of justice as of more consequence than its means.

In our opinion, the fact that appellant Wiggins, the suing taxpayer, was not a resident of Fleming county, in no wise affected either his own legal right to recover taxes unlawfully assessed against his property in that county, and collected from him; nor does the question of where one of numerous *cestuis que trustent* resides affect his legal rights, or right or form of action for the trust fund in which he is interested. Of course, if he were paid off his part of the tax claimed, he would no longer be a representative of the taxpayers who had not been repaid the sums illegally collected from them, though, if he were dismissed, the action would remain for the benefit of others affected, if they saw proper to avail themselves of it.

From the foregoing it necessarily follows: The subject-matter of the litigations is the trust fund, the amount of which determines the question of jurisdiction. The parties plaintiff are those taxpayers who contributed to that fund. The court may, by reasonable requirement, regulate their number so as to do justice to all interests, and may, and, if no others offer as plaintiffs, should, allow one to sue for all. The motion to dismiss the appeal is consequently denied. Oswald v. Morris, 92 Ky., 48; 13 R., 355 (17 S. W., 167), is overruled. Other questions involved are

disposed of in Whaley v. Com., supra, and that opinion should control the further proceedings in this case.

Judgment reversed, and cause remanded for proceedings not inconsistent herewith.