# Black et al. v. Elkhorn Coal Corporation et al.

(Decided March 25, 1930.)

W. E. DARRAGH, WILLIAM MARSHALL BULLITT, BRUCE & BULLITT and LEO T. WOLFORD for appellants.

E. C. O'REAR and SHACKELFORD MILLER. JR. for appellees.

OPINION OF THE COURT BY JUDGE WILLIS—Affirming.

The Elkhorn Coal Corporation owns a large acreage of coal lands in Kentucky and has in operation thereon several large mining plants. On December 1, 1925, it executed to the Mercantile Trust Company of Baltimore, trustee, a mortgage on all of its property in Kentucky to secure an issue of 5,500 bonds of the par value of $1,000 each, of which issue 3,800 bonds are outstanding. The bonds are payable to bearer and for the most part are in the hands of unknown owners. They mature in 1931 on the sixth anniversary of the issue, and may be called prior to maturity on any interest payment date, which is the first of June and December of each year. A large and well-equipped mining plant is located at

Wheelwright on the left fork of Beaver creek in Floyd county, Ky. Entirely without fault on the part of the management, but on account of economic conditions confronting the industry, and peculiar circumstances affecting coal mining in that particular locality, the Wheelwright plant has been operated without profit, perhaps at a loss. The bondholders, as well as the owners of the plant, have ample reason for desiring a change in the existing arrangement. A contract for a transfer of the Wheelwright property, on condition that a good title free of the mortgage lien can be made, has been negotiated with the Inland Steel Company. The contract contemplates the execution of a mining lease on 11,400 acres of coal land in the vicinity of the town of Wheelwright, and a sale in fee of the mining plant. The parties are agreed that the proposed contract is a prudent one that would augment materially the security of the bondholders. The trustee is advised that it has power to join in the conveyance and lease, relinquishing the lien on the property, the proceeds to be applied according to the terms of the mortgage, and it proposes to do so, provided it has the power. Harry C. Black and associates in this suit own 78 of the bonds of the par value of $78,000. Acting for themselves, and assuming to act for all other bondholders, they instituted an action in the Franklin circuit court against the Elkhorn Coal Corporation and the Mercantile Trust Company, trustee, under the Declaratory Judgment Act (Civil Code of Practice, secs. 639a-1 to 639a-12) to obtain an injunction, a declaration of rights, and all appropriate relief. The defendants filed separate answers. The circuit court entered a judgment disposing of the action and declaring that the trustee and coal corporation had the power to carry out the contract with the Inland Steel Company and to convey a clear and unincumbered title. The bondholders appeal.

The several points presented for decision and debated by the various parties are: (1) The venue of the action; (2) the validity of the Declaratory Judgment Act; (3) the right of the appellants to represent effectually the other bondholders not parties to the case or consenting to the action; (4) whether the admitted fact that the transaction will redound to the great benefit of the bondholders is material in determining the power of the appellees to transfer the property free of lien; and (5) whether the Elkhorn Coal Corporation, with the consent of the trustee, has adequate and absolute power to

convey the mortgaged premises free of lien. We address ourselves to these questions in the order stated.

1. Section 62 of the Civil Code of Practice localizes actions for the recovery, partition, or sale of real property, or for an injury thereto; but the present action does not fall within that provision. Section 78 of the Civil Code of Practice provides that an action which is not required by the Code to be brought in some other county, may be brought in any county in which the defendant, or one of several defendants properly joined, resides or is summoned. The action in this case was for injunctive relief and could be maintained in the circuit court of any county where the defendants could be served with summons or where their appearance was entered. De Charette v. St. Matthews B. & T. Co., 214 Ky. 400, 283 S. W. 410, 50 A. L. R. 34; Fidelity Trust Co. v. National Coal & Iron Co., 89 S. W. 718, 28 Ky. Law Rep. 578. In the case last cited the land was situated in Bell county, and the action was instituted in Jefferson county. The principle has been applied in actions for the specific performance of contracts, although respecting real estate (McQuerry v. Gilliland, 89 Ky. 434, 12 S. W. 1037, 11 Ky. Law Rep. 656, 7 L. R. A. 454; Henderson v. Perkins, 94 Ky. 207, 21 S. W. 1035, 14 Ky. Law Rep. 782; Campbell v. Ritter Lumber Co., 140 Ky. 314, 131 S. W. 20, 140 Am. St. Rep. 385), to perfect title to land (Page v. McKee, 3 Bush, 135, 96 Am. Dec. 201), and to rescind a contract concerning land (Thompson v. Elmore, 18 S. W. 235, 13 Ky. Law Rep. 692). A valid personal judgment may be rendered against a party who files a pleading in a transitory action without objecting to the jurisdiction. Baker v. L. & N. R. Co., 4 Bush, 619; McDowell v. Chesapeake, Ohio & S. W. R. Co., 90 Ky. 346, 14 S. W. 338, 12 Ky. Law Rep. 331; Underwood v. Wood, 93 Ky. 177, 19 S. W. 405, 14 Ky. Law Rep. 129, 15 L. R. A. 825. The fact that the action was predicated on the Declaratory Judgment Act does not alter or affect the rule since that act has no provision concerning venue and does not abrogate other relevant provisions of the Code of Civil Practice. Savin v. Delaney, 229 Ky. 226, 16 S. W. (2d) 1039; Edwards v. Bernstein, 231 Ky. 100, 21 S. W. (2d) 133; Lyons' Adm'r v. Greenblatt, 213 Ky. 567, 281 S. W. 487.

2. The constitutionality of the Declaratory Judgment Act of Kentucky is questioned. Although not heretofore raised or expressly determined, the validity of the act has been assumed and jurisdiction under it frequently

592

exercised. Livingston County v. Adams, 199 Ky. 127, 250 S. W. 811; Foreman Automobile Co. v. Morris, 198 Ky. 1, 248 S. W. 486; Shearer, etc., v. Backer, 207 Ky. 455, 269 S. W. 543; Proctor v. Avondale Heights Co.; 200 Ky. 447, 255 S. W. 81; Cavin v. Little, 213 Ky. 482, 281 S. W. 480; Kelly v. Jackson, 206 Ky. 815, 268 S. W. 539; Grooms v. Grooms, 225 Ky. 228, 7 S. W. (2d) 863; Adams, Judge, v. Slavin, 225 Ky. 135, 7 S. W. (2d) 836. In Anway v. Grand Rapids R. R. Co., 211 Mich. 592, 179 N. W. 350, 12 A. L. R. 26, it was held that a statute purporting to authorize courts to make binding declarations of rights when no justiciable controversy was involved conferred nonjudicial powers, contemplated acts of a nonjudicial character, and was in conflict with the Constitution of the State, which vested in the courts only judicial power. The existence of an actual controversy respecting justiciable questions is a condition precedent to an action under the act. Revis v. Daugherty, 215 Ky. 823, 287 S. W. 28; Axton v. Goodman, Clerk, 205 Ky. 382, 265 S. W. 806. The court will not decide speculative rights or duties which may or may not arise in the future, but only rights and duties about which there is a present actual controversy presented by adversary parties, and in which a binding judgment concluding the controversy may be entered. Shearer v. Backer, 207 Ky. 455, 269 S. W. 543; Dietz v. Zimmer, 231 Ky. 546, 21 S. W. (2d) 999. Such legislation is clearly constitutional when it confers purely judicial functions and powers. 33 C. J. p. 1097-1102; State of Kansas v. Grove, 109 Kan. 619, 201 P. 82, 19 A. L. R. 1116. Cf. Muskrat v. U. S., 219 U. S. 346, 31 S. Ct. 250, 55 L. Ed. 246. The present case involves judicial direction to a trustee and a definition of its powers, as well as the construction and operation of a mortgage. All of these matters are proper subjects for the exercise of judicial power. 21 C. J. pp. 115-119. In view of the fact that the Kentucky act vests nothing but judicial powers, to be exercised in actual controversies, it is not necessary to consider the extent of the power to vest jurisdiction in courts where no actual controversy is present. All doubt concerning the validity of the Kentucky act vanishes in view of its express terms and the construction consistently put upon it. If it should be assumed, however, that the Declaratory Judgment Act is invalid, it would not affect the jurisdiction in the instant case, since it was vested in courts of equity before the act was passed, and has not been diminished. Fidelity Trust Co. v. National Coal & Iron Co., 89 S. W.

718, 28 Ky. Law Rep. 578; Cf. City of Earlington v. Powell, 226 Ky. 353-359, 10 S. W. (2d) 1060.

3. The Kentucky Civil Code of Practice, sec. 25, provides: "If the question involve a common or general interest of many persons, or if the parties be numerous and it is impracticable to bring all of them before the court within a reasonable time, one or more may sue or defend for the benefit of all." The bondholders have a common interest in the property pledged for the security of the bonds. They constitute a numerous class, constantly changing, and it is a practical impossibility to bring all of them before the court. The case comes clearly within both conditions upon which the right of members of a class to represent others of the class may be maintained. 34 C. J. p. 1002, sec. 1422. Where the interest of the parties in a common security is not distinct, but collective, representatives of the class may maintain actions and secure binding judgments. It is clear that one or more interested parties, fairly representative of the class whose rights the court may protect, may maintain actions for the benefit of all others similarly situated. Alexander v. Gish, 88 Ky. 13, 9 S. W. 801, 10 Ky. Law Rep. 898; Commonwealth v. Scott, 112 Ky. 264, 65 S. W. 596, 23 Ky. Law Rep. 1488, 55 L. R. A. 597; Whaley v. Com., 110 Ky. 154, 61 S. W. 35, 23 Ky. Law Rep. 1292; Sparks v. Robinson, 115 Ky. 453, 74 S. W. 176, 24 Ky. Law Rep. 2336; McCann v. City of Louisville, 63 S. W. 446, 23 Ky. Law Rep. 558; Gorley v. City of Louisville, 65 S. W. 844, 23 Ky. Law Rep. 1782; Shipp v. Rodes, 196 Ky. 523, 245 S. W. 157. The principle is accepted and applied by the Supreme Court of the United States. Hartford Life Ins. Co. v. Ibs, 237 U. S. 662, 35 S. Ct. 692, 59 L. Ed. 1165, L. R. A. 1916A, 765; Supreme Council v. Green, 237 U. S. 531, 35 S. Ct. 724, 59 L. Ed. 1089, L. R. A. 1916A, 771; Supreme Tribe of Ben Hur v. Cauble, 255 U. S. 356, 41 S. Ct. 338, 65 L. Ed. 673. When the interest of the claimants is common and collective, it is proper that a class suit should be brought, and a decree therein is binding on all of the class. Stone v. Winn, 165 Ky. 9, 176 S. W. 933. Moreover, it is settled in this jurisdiction that the trustee represents all the bondholders, and a judgment in an action affecting the subject-matter of the trust, to which the trustee is a party and by which it is bound, binds the beneficiaries, although they may not be parties to the record or participate in the proceedings. 34 C. J. pp. 1002-1004, sub-

secs. 1422, 1423; Letcher v. Letcher, 99 S. W. 628, 30 Ky. Law Rep. 707; Fidelity Trust Co. v. National Coal & Iron Co., 89 S. W. 718, 28 Ky. Law Rep. 578. In the case last cited, the Fidelity Trust Company and others, owners of bonds quite similar to those here involved, instituted an action in equity to enjoin the mortgagor and trustee from disposing of a portion of the mortgaged property free of the lien. The court entertained jurisdiction, but affirmed a judgment dismissing the action upon the ground that the mortgagor and trustee, acting together possessed power to make the transfer. See also Krieger v. Bissell, Trustee, 80 Ky. 330; Corcoran v. Chesapeake Canal Co., 94 U. S. 741, 24 L. Ed. 190; Shaw v. Little Rock R. R. Co., 100 U. S. 605, 25 L. Ed. 757; Mayor, etc., of Baltimore v. United Railways & Electric Co. of Baltimore, 108 Md. 64, 69 A. 436, 16 L. R. A. (N. S.) 1006. The cases of Thomas v. Kentucky T. & S. Co., 156 Ky. 260, 160 S. W. 1037; Union Light Co. v. Mulligan, 177 Ky. 662, 197 S. W. 1081; Batman v. Louisville Gas & Elec. Co., 187 Ky. 659, 220 S. W. 318; Barriger v. Louisville Gas & Electric Co., 196 Ky. 268, 244 S. W. 690, 31 A. L. R. 1408; Swiss Oil Corporation v. Shanks, 208 Ky. 64, 270 S. W. 478; Cossar v. Klein, 227 Ky. 768, 14 S. W. (2d) 160, are not in conflict with the principle announced. In cases where an individual creditor seeks to recover a debt due him, there is no such community of interest with other claimants having similar claims as to authorize a class suit. Those entitled to recover debts may assert or waive their rights, and when they do either, no others have the right to act for them. In Cossar v. Klein, 227 Ky. 768, 14 S. W. (2d) 160, a stockholder was asserting a right to prosecute an appeal for other stockholders, as well as himself. Each stockholder was assessed separately, and the statutory remedy was vested solely in the aggrieved taxpayer. The procedure was purely statutory, and did not confer any right upon one taxpayer to represent another. The distinction between the two lines of cases is obvious and has been sufficiently delineated in the opinions cited. We entertain no doubt that the judgment rendered in this action is binding upon all the bondholders wherever located.

4. It is conceded by all parties that the proposed contract is a wise one and will redound to the benefit of all concerned. It is suggested that this fact is immaterial in construing the terms of the written instruments involved. We may pass the suggestion without comment, since our view of the meaning of the written docu-

ment does not require recourse to that circumstance. It may be observed, however, that the right of the bond-holders to invoke the aid of a court of equity might be denied upon the ground that no injury to their rights is threatened. 21 C. J. sec. 420, p. 399.

5. This brings us to a consideration of the main question, which is the power of the Elkhorn Coal Corporation with the consent of the trustee to make the lease and convey the other property free of the lien. It is not seriously contended that the mortgage does not confer the power to make the lease. Indeed, it could not well be in view of the explicit provision of the mortgage conferring that power. It reads:

"(c) The Coal Corporation shall have the right with the consent of the Trustee from time to time to make leases, authorizing the mining of coal, or other mineral products, or the removal of oil or gas, from any part or parts of the property hereby mortgaged, provided the same shall be on customary terms, and contain the provisions usual in such leases, and the Trustee, if it shall deem the same to be fair and reasonable, shall consent to such leases by uniting in the execution thereof or otherwise, and no foreclosure of this mortgage shall affect the rights of the lessee under any such lease.

"The interests of the lessor in such lease and all rights and powers of the lessor thereunder shall become and be subject to the lien and provisions of this Indenture. Until an event of default shall occur and shall continue for the period of grace herein provided in respect thereof, if any, the sums payable as royalty under such leases shall be payable to the lessor.

"In giving any consent in this Section 1 provided for, the Trustee may rely upon the advice of a competent mining engineer, or other expert selected or approved by it (who may be a mining engineer in the employ of the Coal Corporation), and the Trustee shall not be liable for any action taken by it on the faith of such advice, nor for any failure to act."

But it is argued that more difficulty is encountered in deducing power to sell the mining plant and its equipment free of lien. The Elkhorn Coal Corporation as owner possesses the undoubted power to sell and convey all of its property, subject to the restrictions upon that

power imposed by the deed of trust. The provisions of the deed of trust relied upon as forbidding the sale are as follows:

"Section 6. The Coal Corporation shall be entitled. to sell or otherwise dispose of, free from the lien of this Indenture, and have released from the lien of this Indenture, any of the coal lands, or mineral rights, or timber rights, in lands certified by the President or a Vice-President and Secretary or Assistant Secretary or Treasurer or Assistant Treasurer of the Coal Corporation to be lands owned by the Coal Corporation at the date of the execution hereof, consisting of 'unclassified lands' as hereinafter defined, provided such certificate shall state that the lands so sold or otherwise disposed of, the release whereof is then requested, constitute no part of the coal lands of the Coal Corporation at such time in operation, and that such lands are not required by the Coal Corporation in the judicious management and operation of its business, and that the sale or other disposition thereof is of advantage to and for the benefit of the Coal Corporation and that the consideration to be received therefor by the Coal Corporation is adequate; and furthermore, that none of such lands so to be released therefrom include any of the lands situated in Letcher County, Kentucky, or in Pike County, Kentucky, West of the Russell Fork of Big Sandy River, or any lands situated on Beaver Creek or any of its tributaries in the County of Floyd and County of Knott, or either of them.

"The Trustee may rely upon such certificate as conclusive evidence of any and all facts which may be stated therein, and such certificate shall constitute full authority to the Trustee to execute and deliver a release from this Indenture of all lands described in such certificate.

"The term 'unclassified lands,' above referred to in this Section 6, shall be deemed to consist only of such of the lands as have been acquired by the Coal Corporation from Elkhorn Fuel Company, and shall be designated in such certificate as 'unclassified lands' by virtue of the fact that such lands at the date hereof, and at all times prior thereto have been disconnected with the coal lands of the Coal Corporation heretofore operated.

"All moneys or other proceeds of sale so received by the Coal Corporation upon any such sale or other disposition of such lands shall be paid or delivered by it to the Trustee and shall be used and applied to making betterments and improvements or additions of a permanent nature to or upon other property and premises subject to the lien of this Indenture, or to reinburse the Coal Corporation for expenditures made by it for any of said purposes subsequent to the date hereof. The Trustee shall pay and deliver any moneys or other proceeds of sale received by it upon the order of the President or one of the Vice-Presidents of the Coal Corporation, accompanied by such vouchers, certificates or other evidence as may be satisfactory to the Trustee, showing the use and application of the amount of moneys or other proceeds of sale stated in such order to and for one or more of the purposes heretofore in this Section 6 mentioned. The Coal Corporation, however, by resolution of its Board of Directors may at its election at any time, direct the Trustee to apply any such moneys to the purchase and cancellation of Bonds secured hereby at not exceeding 101%, or if such purchase is made prior to December 1, 1926, at not exceeding 103%, of their face value and accrued interest, or to the redemption of any of the Bonds which may be called for redemption in the manner provided in Article III hereof.

"Section 7. The Coal Corporation shall be entitled to sell for cash or in part for cash and in part for notes secured by purchase money lien and thereupon to have released from the lien of this Indenture, any of the other coal lands, or mineral rights, or timber rights, in lands which now are, or may become, subject to the direct lien of this Indenture, but only upon and subject to the following terms and conditions:

"There shall in each instance be delivered to and deposited with the Trustee before it shall be required to release any such lands, or mineral rights, or timber rights;

"(a) a resolution of the Board of Directors of the Coal Corporation, describing the lands or rights to be conveyed, and stating the amount to be received therefor, and further declaring that the sale of said lands or mineral rights therein described, at

598

the price stated, will be advantageous to the Coal Corporation;

"(b) a certificate of a competent mining engineer, satisfactory to the Trustee (who may be a mining engineer in the employ of the Coal Corporation), to the effect that the price stated in the aforesaid resolution of the Board of Directors of the Coal Corporation is an adequate consideration for the lands, or mineral rights, or timber rights, described in said resolution;

"(c) a deposit with the Trustee of the amount in cash or other proceeds of sale, as recited in said resolution and certificate to be received in consideration of said sale.

"Any monies received by the Trustee pursuant to the provisions of this Section shall be applied by the Trustee in the purchase and cancellation of Bonds secured hereby at not exceeding 101%, or if the purchase is made prior to December 1, 1926, at not exceeding 103%, of their face value and accrued interest or in their redemption in accordance with the provisions of Article III hereof as soon as may be under the provisions of said Article, and the Coal Corporation hereby covenants to take all necessary action precedent to the call and redemption of Bonds and coupons to the extent that such Bonds with interest and premiums can be paid out of the funds on deposit with the Trustee from time to time; and until any such amount so received by the Trustee, or any part thereof, shall be applied to the purchase or redemption of Bonds, it shall be held by the Trustee as a part of the trust estate and as security hereunder for the benefit of the bonds and coupons."

Two principal features are dominant in these provisions. Section 6 defines "unclassified lands," provides the procedure for their sale, and directs the application of the proceeds derived therefrom. Section 7 provides for the sale of "any of the other coal lands or mineral rights or timber rights in land" and fixes the conditions of sale and requires the application of the proceeds to the payment of the bonds. The two provisions operating together authorized the sale and conveyance free of lien of all the property covered by the mortgage. It was not intended to leave any lands in a sanctuary apart from the control of the owners. Clearly the lands proposed to be transferred to the Inland Steel Corporation are not

"unclassified lands," as defined by section 6. This is so because unclassified lands possess three characteristics: (1) They must have been acquired from the Elkhorn Fuel Corporation and not connected with operated coal lands; (2) the term does not embrace operated coal lands; and (3) excludes all lands on Beaver creek. Since the land involved is operated coal lands located on Beaver creek, it is not within the provisions of section 6 concerning unclassified lands. It falls squarely within the provisions of section 7 as "other coal lands" which are excluded from section 6. The owner's obvious right of sale was reserved and certain conditions thereon imposed by the mortgage. The evident purpose was to authorize a sale in every instance, even of all of its property as an entirety. Article 11, section 4, Mortgage, p. 71. The application of the proceeds differed in different instances, but there was no instance in which a sale could not be concluded. It would ascribe an unnecessary and foolish caution to the authors of the instrument to hold that they had surrounded the security with such ironclad provisions that a sale would be impossible no matter how profitable. The instrument is not reasonably susceptible to that construction. It resembles the terms of the mortgage involved in the case of Fidelity Trust Co. v. National Coal & Iron Co., 89 S. W. 718, 28 Ky. Law Rep. 578, where the court held that express power to sell free of the lien was reserved, although such power may be implied when necessary to accomplish the object or purposes of the trust. The object to be attained in this instance was the ultimate payment of the bonds. The proposed contract promotes that object. It is consistent with the terms and object of the mortgage. It is within the express power reserved therein, offends no public policy, and infringes no private right.

But it is insisted that the personal property is included in the mortgage, but not included in the power of sale, and that the corporation may not sell it free of lien. The personal property, after the description of the real property, is included in general terms and not by any specific description. The instrument constitutes a mortgage on the personal property only while it is used and connected with the real estate. Cf. Hauseman Motor Co. v. Napierella, 223 Ky. 433, 3 S. W. (2d) 1084. The power to sell the plant carries with it the power to sell the equipment and personalty used in connection therewith. It was not necessary for it to be the subject of a

600

separate description, or of a distinct power of sale. It was included in the mortgage, as a part of the plant as an entirety, and when the plant is sold the appurtenances and equipment go with it. Cf. National Bank of Kentucky v. Kentucky River Coal Corporation, 230 Ky. 683-688, 20 S. W. (2d) 724. It would be impossible for the trustee to enforce or maintain a lien on the personal property apart from the mining property with which it was used and connected in operation. Cf. U. S. v. Denver & Rio Grande R. R. Co., 150 U. S. 3, 14 S. Ct. 11, 37 L. Ed. 975; Central Trust Co. v. Sheffield Ry. Co., etc. (C. C.) 42 F. 106, 9 L. R. A. 67. When the lien on the land is released, the incidental lien on the personalty is extinguished.

We are satisfied the circuit court correctly construed the instrument and rendered the appropriate judgment.

The judgment is affirmed.

Whole court sitting.