## Commonwealth Life Insurance Company et al. v. Louisville Railway Company et al.

(Decided June 17, 1930.)

W. PRATT DALE for appellants.

JOHN C. DOOLAN, CHARLES W. MILNER, ROBERT F. VAUGHAN and ALFRED SELLIGMAN for appellees.

OPINION OF THE COURT BY JUDGE WILLIS—Affirming.

Forty years ago the Louisville Railway Company executed a first mortgage upon all of its property to secure a bonded indebtedness of $6,000,000, maturing July 1, 1930. Ten years later it executed a second mortgage upon the same property and in substantially similar terms to secure $2,000,000 of bonds due March 1, 1940. On February 1, 1910, a third mortgage was executed upon the same property to secure an authorized issue of bonds aggregating $20,000,000 due in forty years from date. It was contemplated that the first and second mortgages should be discharged from a part of the proceeds of the third mortgage bonds, and the latter instrument provided that $8,000,000 of the total issue thereby authorized should be reserved for the redemption of the bonds previously issued and outstanding. But this purpose was not accomplished, for the reason that the market price of the bonds was so low that the proceeds thereof, if sold, would not be sufficient to redeem the earlier bonds. Consequently the situation existing is that all three mortgages are in full force and effect, with $6,000,000 of the first issue outstanding and unpaid, $2,000,000 of the second series outstanding and unpaid, and about $6,500,000 of the third authorization issued, outstanding, and unpaid. No default has occurred in the payment of interest on any of the bonds, but the Louis-

ville Railway Company will be unable to pay in full the bonds maturing July 1, 1930.

To prevent a default on the first mortgage debt, a definite plan of refinancing has been negotiated. It contemplates that the railway company will sell and convey free of lien to the Louisville Gas & Electric Company its power plant, transmission lines, and substations, for the sum of $3,000,000 cash, which will be applied by the trustee to the payment of one-half of the outstanding first mortgage bonds. The purchaser obligates itself to supply electric power to the Louisville Railway Company for the operation of its cars and it does not appear that the arrangement will impair the earnings of the street car company. The remaining $3,000,000 of the first mortgage bonds are not to be paid, but the date of maturity thereof will be postponed for five years. The interest rate will be increased 1½ per cent. per annum, but any lien for the additional interest is subordinate to the liens of the second and third mortgages. In order to assure the consent of all the holders of the first mortgage bonds to the extension of the due date of the bonds, a syndicate of bankers and brokers has been organized to purchase and pay for any bonds held by persons or institutions unwilling to consent to the extension. A controversy arose respecting the legality of the plan of refinancing, and an action was filed by the Commonwealth Life Insurance Company and several individual holders of the second and third mortgage bonds against the street railway company and the trustees under the three mortgages to end the controversy and to determine the validity of the proposal.

The questions debated relate to the right of the trustees in the three mortgages to relinquish the liens of their respective mortgages upon the property to be sold; the power of the street car company, with the consent of the holders, to postpone for five years the maturity of the bonds which are not presently to be paid, without involving a precipitation of the bonds secured by the third mortgage; the right of the trustees in the three mortgages to join in the agreement with the syndicate of bankers and brokers to accomplish the purposes of the plan; and the definition of default as used in the third mortgage in connection with the execution of the renewal or extension of the maturity of one-half of the first mortgage bonds.

The circuit court decided that the plan was legal, and so declared by its judgment, from which the holders of the second and third mortgage bonds have prosecuted an appeal. The action was properly brought by holders of the several series of bonds fairly representative of the respective classes to which they belonged, and it is not questioned that the judgment in this case is binding on all parties concerned. Black v. Elkhorn Coal Corp., 233 Ky. 588, 26 S. W. (2d) 481.

The appellants do not contend that the trustees may not release the liens of the three mortgages on the property to be sold to the Louisville Gas & Electric Company. The several mortgages confer that power upon the trustee upon proper certification of the street railway company that the property is not necessary for the operation of the road and is being sold at its fair cash value, pro-vided the proceeds of the sale, if improvements are not added, or other property purchased therewith, shall be applied to the retirement of bonds in the order of their priority. The provision has been observed in this instance, and the proceeds derived from the sale will be applied in retiring one-half the bonds secured by the first mortgage. The trustees, under such circumstances, are required to execute the releases requested.

The pivotal question raised is the right of the railway company, with the consent of the bondholders, to postpone for five years the maturity of the unpaid portion of the first mortgage bonds. If failure on July 1, 1930, to pay all of the bonds secured by the first mortgage would constitute a default under the terms of either of the subsequent mortgages, the plan could not be executed, since the consent of the holders of bonds under the second and third mortgages has not been obtained. The proposition requires an interpretation of the provisions of the various mortgages. The first mortgage contained a covenant for the punctual payment of semi-annnal interest on the bonds intended to be secured thereby "or any bonds that might be issued or accepted in lieu, renewal or substitution of the same respectively," and further obligated the mortgagor to pay the principal of the bonds whenever, according to the provisions thereof, they should become due and payable. Proceeding from an analysis of that provision of the mortgage, it is argued that the covenant to pay interest recognized the right of renewal or substitution, but that the covenant to pay the principal was absolute and unconditional. Such a separa-

tion of the covenants would appear to be impossible. It is not necessary, however, to the right of renewal that it should be reserved in the obligation. The liberty of contract of the parties, which is a fundamental right of freemen, is subject only to such limitations as may be imposed by the terms of the mortgage. No default under a mortgage may be declared if the debtor and creditor mutually agree upon a postponement of the maturity date when there is no provision of the instrument restricting the right of renewal. Neither the first nor the second mortgage contains any limitation on the right of the parties to the first mortgage to postpone the maturity of the debt. It is insisted, however, that the third mortgage contains an express and independent covenant on the part of the street railway company to pay off and discharge the bonds secured by the two prior mortgages as they respectively mature, which covenant impliedly forbids a renewal of the first mortgage bonds.

The third mortgage contains a covenant to pay the bonds secured by the prior mortgages, but it does not contain any prohibition against renewal, or any restriction on the right to postpone the date of maturity of all or any part of them. The right of renewal is seldom expressed in the contract, and, when it is not so expressed, it cannot be enforced, but, when the parties agree upon a renewal, no third party has any right to object in the absence of some contractual power giving him that right. It must be remembered that, when the third mortgage was written, it contemplated that the prior mortgages would be discharged out of the proceeds of the third, and that the entire mortgage debt should be secured by the third mortgage alone. The fact explains the provision in the third mortgage to the effect that nothing therein contained should prevent the railway company by arrangement with the holder or holders of the bonds then outstanding *under this indenture* from extending the time of payment of the principal thereof. It may be assumed that the author of the limitation thus expressed had in mind that the covenant to pay might raise an implication against renewal of the debt, and to meet that implication the provision forbidding it was inserted to preserve the right to postpone maturity of the bonds by agreement of the parties without affecting the security provided by the mortgage.

The presence of the provision in the third, and its omission from the other mortgages does not imply that

the right to renew the older bonds was surrendered or impaired. Nor does an express covenant to pay raise any implication against the right of the parties interested to postpone the date upon which payment ultimately should be due. The entire freedom of the parties in that respect was not circumscribed by any restrictions. The right and duty of the trustees to join in the plan cannot be questioned, unless such assent would impair their freedom of action in case of default by the street railway company. If the plan proposed involves no default, the trustees, in the interest of those represented, may properly participate in carrying it into effect.

This brings us to the vital and decisive question presented, which, as the parties agree, is whether the proposed postponement of the maturity of a part of the first mortgage bonds constitutes a default within the meaning of the third mortgage. The third mortgage bristles with references to default as therein defined, and the definition is found in the following provision:

"In case default shall be made by the Railway Company in the payment of the principal of any of the bonds secured hereby, or any interest on said bonds, and if such default in the payment of such interest shall continue for a period of three months, *or in case default shall be made by the Railway Company in the payment of the principal of any bonds secured by said prior deeds of trust, or either of them, when and as the same, according to the terms thereof, shall mature,* or of the interest on any of said bonds, or in case default shall be made by the Railway Company in the payment of any tax, assessment or other governmental charge lawfully imposed upon the property herein embraced, or any part thereof, or upon the income or profits thereof, and such last mentioned default shall continue for a period of three months after written notice from the Trustee or from any holder of bonds secured hereby that such tax, assessment or other governmental charge has become due and payable; or in case the Railway Company shall make default in the due observance or performance of the covenant of further assurance or of any other of its covenants, promises and assurances herein contained, and either of said last mentioned defaults continue for a period of three months after written notice

from the Trustee or any holder of bonds secured hereby, then it shall be lawful for the said Trustee, upon the written request of holders of one-fifth of the bonds then outstanding under this indenture, to declare, and it shall declare, the principal of all of said outstanding bonds to be at once due."

The other provisions relate to remedies in the event of a default, but add nothing respecting the matter to the meaning of the one quoted, and need not be stated. It will be observed that the right to precipitate the maturity of the third mortgage is made to depend upon a default in the performance of obligations created and secured by the prior mortgages. The instrument does not undertake to define precisely what shall constitute a default in that respect, and hence it is necessary to deduce a definition from the common understanding of the word and the intention of the parties in using it in the instruments involved. It is argued that a mere failure to pay the bonds is a breach of the covenant and consequently a default, but the covenant to pay must be construed in the light of the tacit assumptions reasonably to be attributed to the parties who employed the words. The power of the parties interested to postpone payment was not forestalled or prejudged. The agreement was to pay the debt when and as the same, according to the provisions of the bonds, should mature. It did not mean that the bonds were to be payable absolutely and at all hazards on an arbitrary date. When the maturity of an obligation has been extended, it is not payable according to the terms thereof until the arrival of the maturity date finally fixed. By the terms of the first mortgage bonds, when the plan for the extension thereof shall have been executed, the one-half remnant of the bonds will not mature until July 1, 1935. That is the contract of the parties. It does not increase the burden, or impair the security, of the bondholders under the later mortgages, and is entirely within the rights of the parties concerned with the bonds under the first mortgage. It must not be forgotten that the lien and priority of the bonds in relation to the junior liens are not affected by reason of a precipitation or postponement of maturity. Just as an acceleration of the maturity may be accomplished through a default so a postponement may be procured by an agreement, and neither event displaces the relative rights of the debts as to priority. Common sense would

compel the parties to anticipate that conditions might be such that a postponement would be vastly important to prevent the sacrifice of the security. "It would ascribe an unnecessary and foolish caution to the authors of the instrument to hold that they had surrounded the security with such ironclad provisions that a sale would be impossible no matter how profitable." Black v. Elkhorn Coal Corp., 233 Ky. 588, 26 S. W. (2d) 481.

It is well settled that a mortgage is not discharged or its lien affected by any change in the form of the debt which it secures, or in the form of the evidence of it, so long as a novation is not executed, or an agreement made that the change in form shall operate as a payment. Where a note secured by a mortgage is taken up at or before its maturity, and a new or renewal note substituted for it, the mortgage continues as security for the debt in its new form. There is no change in the rights or remedies of the mortgagee, and the mortgage continues as a security for the new obligation with the maturity postponed. 41 C. J. p. 807, sec. 945; Mullins v. Clark, 15 S. W. 784, 13 Ky. Law Rep. 29; Bank of America v. McNeil, 10 Bush 54; Burdett v. Clay, 8 B. Mon. 287; Jarboe v. Shiveley, 109 Ky. 402, 59 S. W. 328, 22 Ky. Law Rep. 968, 95 Am. St. Rep. 384. Default is a word of many meanings, but, as applied to the conditions in a mortgage, it refers to nonperformance by the party bound, without the consent of the parties entitled to performance, and possessing the right to postpone the due date of a payment. 18 C. J. p. 456; Cole v. Hines, 81 Md. 476, 32 A. 196, 32 L. R. A. 455; Words and Phrases, Second Series, vol. 1, page 1264. No one may be said to be in default upon a written obligation for the payment of money when as yet no right of action has accrued against him. Osborn v. Rogers, 49 Hun. 245, 1 N. Y. S. 623.

An agreement between a mortgagee and mortgagor for an extension of time for the payment of the indebtedness secured by the mortgage based on a valid consideration is binding between the parties and as against third parties whose rights are subordinate to those of the principal creditor. American Securities Co. v. Goldsberry, 69 Fla. 104, 67 So. 862, 1 A. L. R. 15. If the party to whom payment is due and who possesses the right to waive payment agrees to a postponement of the date of payment, there is no default in any real sense of the word. Arnot v. Union Salt Co., 186 N. Y. 501, 79 N. E. 719; DeGroot v. McCotter, 19 N. J. Eq. 531.

810

Holders of subsequent securities take them subject to the rights of the parties with superior equities and one of those rights recognized by the law is the undoubted privilege of postponing payment. The mere extension of the time of payment of prior debts in no way impairs the security of subsequently secured creditors, and the right of the parties holding prior liens to make extensions is one of the conditions to which a holder of subsequent securities is necessarily subject. First National Bank v. Citizens' State Bank, 11 Wyo. 32, 70 P. 726, 100 Am. St. Rep. 925. In the case of Willett v. Johnson, 84 Ky. 411, 1 S. W 674, 8 Ky. Law Rep. 398, to which reference was made at the oral argument, it was held that a contract between a mortgagor and the mortgagee, extending the time of payment of mortgage debts, coupled with a compounding of interest, could not be enforced so as to prejudice the junior lienholders; but the prior lien lost none of its validity, except to the extent of the compound interest. The principle upon which that case is predicated is respected in the proposed plan by subordinating any lien for the additional interest allowed on the extended indebtedness to the lien of the junior mortgages. Since the amendment to the Civil Code of Practice (section 694) by the Act of March —, 1916 (chapter 105, p. 656) the holder of a junior lien cannot be prejudiced by postponing the maturity of a senior mortgage, even beyond the due date of the junior lien, for the reason that the right to enforce junior liens, subject to unmatured prior ones, is expressly authorized by the amendment. The junior lienholder may sue at any time his debt may be due and his creditor found in default. The enforcement of his rights are subject to the superior lien, but need not be delayed until the latter is due. It is obvious that no default in payment of the debts can result from the consummation of the plan contemplated in this instance. The opposite purpose actuated the whole enterprise. It was designed to obviate any default and to preserve the rights of the bondholders in the hope that time may work to the advantage of all concerned.

The provisions of the third mortgage evince no intent or purpose to abrogate the right of the parties concerned in the first mortgage bonds to postpone the date of maturity or to restrict its exercise in any particular. The rights of the bondholders under the third mortgage were at all times subject and subordinate to the

rights of the holders of the first mortgage bonds, and the covenant contained in the third mortgage to pay the earlier ones added nothing to the primary obligation of the street car company to pay those debts. Undoubtedly it afforded some protection to the bonds under the subsequent mortgages in the fact that a default under the first mortgage would accelerate the maturity of all the debts and thereby entitle the trustees to participate at once in any proceedings that might result. The several instruments must be read together and considered as a whole in the light of the surrounding circumstances, and given the meaning manifested by their terms. Considered from that standpoint, no ground appears for holding that the covenant in the third mortgage to pay the first mortgage bonds carried any implied prohibition against a renewal therof, or prevented the parties from stipulating for an extension of the maturity date.

It is argued for the appellants that it was a vain and useless thing to provide in the third mortgage that the mortgagor must pay the bonds secured by the first and second mortgages when and as they should mature, and thereby make the third mortgage a first one, and to provide at the same time for a drastic remedy for default in the performance of that covenant, if the whole purpose could be defeated by permitting the street railway company through any device to extend the due date of bonds secured by the first mortgage. The argument assumes that the postponement of the maturity of the bonds is a default, in which event the drastic remedies provided by the third mortgage become available; but such is not the purpose of the contract or the effect of the instrument. If the street car company paid the bonds, it would not be in default; and, if it secures a further time in which to pay them, it will not be in default, since the unpaid bonds, under the new arrangement, will not be due or payable until July 1, 1935. No one will be in position to sue upon the bonds, and, so long as that situation prevails, no default under either of the three mortgages can be declared. Jones on Mortgages, vol. 2, sec. 1190, p. 826. Indeed, if the privilege of prepayment be not reserved, the debtor, during the extension period, has no absolute right to pay the debt in advance of maturity. Hamilton v. Ky. Title S. B. & T. Co., 159 Ky. 680, 167 S. W. 898, L. R. A. 1915B, 498; Schwartz v. Prudential Insurance Co., 227 Ky. 823, 14 S. W. (2d) 135. The chan-

cellor correctly defined the rights of the parties, and disposed of the case by an appropriate decree.

The judgment is affirmed.

Whole court sitting, except Judge DIETZMAN.