## Bosworth v. City of Middlesboro, et al.

(Decided January 18, 1921.)

### Appeal from Bell Circuit Court.

1. Municipal Corporations—Indebtedness—Constitutional Restric-
tions.—A city of the third class, with a population of less than
fifteen thousand persons, is not authorized to incur an indebted-
ness in excess of five per centum of the assessed value of its
taxable property, unless at the time of the adoption of the Con-
stitution, it then had an indebtedness in excess of, five per
centum of its taxable property, in which event, it may incur an
additional indebtedness, not in excess of two per centum of the
value of its taxable property, to be estimated by the assessment
immediately preceding the last assessment before the incurring
of the indebtedness.

2. Municipal Corporations—Indebtedness—Constitutional Restric-
tions.—If at the time of the adoption of the Constitution a city
of the third class, having a population of less than fifteen thou-
sand persons, has an indebtedness in excess of five per centum
of the value of its taxable property, and such indebtedness is
thereafter reduced to a sum less than five per centum of the
value of its taxable property, it can not thereafter incur in-
debtedness, including that existing, in excess of five per centum
of the taxable property.

3. Municipal Corporations—Issual of Bonds—Pleading.—An ordi-
nance by the commissioners of a city of the third class, providing
for the issual of bonds of the city, and the levy of a tax to pay
the interest thereon, and to liquidate the principal when due, is
presumed to be a valid exercise of its powers within the con-
stitutional limitations, and one, who attacks the ordinance upon
the grounds of unconstitutionality, must set out in his pleading,

the facts, which demonstrate the invalidity, or else fail in his action.

A. J. CARROLL for appellant.

T. G. ANDERSON for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE HURT—Affirming.

It is alleged in the petition, and admitted by the demurrer, thereto, to be true, that Middlesboro is a city of the third class, with a population of less than 15,000. At the time of the bringing of this action, its indebtedness consisted of $12,000.00, face value, in six per cent bonds, issued for school purposes, which were dated July 1, 1906, and mature July 1, 1926; $18,000.00, face value, six per cent bonds issued for school purposes which were dated July 1, 1911, and mature on July 1, 1931; $28,800.00, face value, of refunding bonds which were dated on September 1, 1908, and due September 1, 1928; and $150,000.00, face value, of refunding bonds, dated October 1, 1920, and maturing serially every five years from 1925 to 1950. The existing indebtedness thus amounts, in the aggregate, to $208,800.00. The city owes no floating indebtedness.

Of the foregoing indebtedness, the item of $150,000.00 in bonds, are bonds given to refund other bonds in the same amount, which were issued and sold by the authority of laws existing before the adoption of the Constitution, and to refund indebtedness incurred before that time, and that indebtedness has continuously existed since its incurrence to the present time.

The value of all the property within the city, as assessed for taxation for the year 1918, was the sum of $2,013,460.00; for the year 1919, $2,210,435.00; and for the year 1920, the sum of $3,250,000.00. The latter assessment of property, subject to taxation was the greatest, in value in any year since 1893, and from the best evidence obtainable from the records, and other sources, since and including the year 1892.

It is, also, averred, that at the time of the adoption of the Constitution, and for the years 1891, 1892 and 1893, the city owed a floating indebtedness, the exact amount of which can not be certainly stated, but which from the best evidence obtainable from the records and other available sources of information, amounted, at

the time of the adoption of the Constitution, to something in excess of $80,000.00, and this sum continued an existing indebtedness until the year 1896, when it was reduced to $60,000.00, and at that time the city issued bonds therefor, and in 1908 the bonds were reduced by payment to the present sum of $28,800.00, and this sum remains due and unpaid. Thus assuming the correctness of the averments, that the floating indebtedness of the city was $80,000.00, at the adoption of the Constitution, the aggregate sum of its indebtedness at that time was $230,000.00, and of that indebtedness the sum of $178,800.00 has continuously existed since that time, and yet remains unpaid.

It is, also, averred that the exact amount of the value of the taxable property assessed for taxation for the years 1890, 1891, 1892 and 1893 can not be certainly given, but from the best evidence obtainable from the records of the city and from other sources of information, the value of the taxable property in the city, assessed for taxation, for the years 1890 and 1891, was for each year $4,000,000.00, and for the year 1892 it was $3,009,500.00, and for the year 1893 it was a less sum than the assessment for the year 1920. The reason given for the inability of the pleader to state with certainty the amount of the floating indebtedness existing against the city at the time of the adoption of the Constitution, in the year 1891, and for the years 1892 and 1893, as well as the aggregate value of the taxable property, assessed for taxation in the city for each of those years, is that certain records of the city are lost or mislaid, and the imperfect manner in which others of them were kept, but the averment is made that from the best evidence obtainable, the floating indebtedness of the city, for the years 1891, 1892 and 1893, and at the adoption of the Constitution, and the value of the property, as assessed, for the years 1890, 1891, 1892 and 1893 was in accordance with the amounts given.

On November 4, 1919, the city did not owe any floating indebtedness; and on that date it had in its sinking fund for the liquidation of the $30,000.00 of bonds, which were issued in aid of its schools, the sum of $17,000.00, and this sum, at the bringing of this action, had increased and amounted to the sum of $19,000.00.

In the year 1919, it became desirable to provide the municipality with certain public improvements, the cost

of which, together with the existing indebtedness, could not be satisfied with the income and revenue of the city, provided for the year in which the proposed additional indebtedness, necessary to make the improvements, would be incurred, and to provide for such costs, the mayor and commissioners of the city duly enacted an ordinance, providing for an election to be held in the city on the regular election day, November 4, 1919, at which time the question of whether or not the city should be authorized to incur an additional indebtedness, and within the limitations prescribed by the Constitution, but not to be in excess of $50,000.00, for the purpose of paying the costs of the improvements, and for that purpose to issue and sell the bonds of the city in the amount authorized by law, to become due within forty years, and thereafter to levy a tax to pay the interest thereon and to provide a sinking fund to pay the principal when due, was submitted to the voters of the city. At the election, more than 2/3 of those voting, gave their assent to incurring the additional indebtedness and to the issual and sale of the bonds of the municipality therefor. Since, the mayor and commissioners have enacted an ordinance providing for the incurrence of the additional indebtedness by the city, in the sum of $30,000.00, under the authority granted by 2/3 of the voters at the election, by the issue and sale of the bonds of the city, in the amount stated, and providing for the levy of a tax to pay the interest on same and to create a sinking fund to liquidate the principal of the bonds at maturity.

This action was instituted by the appellant, as a citizen and taxpayer of the municipality to enjoin the city from incurring the indebtedness and its officers from issuing and selling the bonds, and to have the bonds adjudged to be void. A general demurrer to the petition having been sustained, the appellant declined to further plead and his petition having been dismissed, he has appealed from the judgment.

The appeal is rested upon three grounds, on account of which it is contended that the judgment is erroneous.

First. The proposed indebtedness, added to that existing, makes a sum in excess of the indebtedness, which may be incurred by such a municipality, under the provisions of section 158 of the Constitution, and is in violation of section 157 thereof.

Second. The question submitted to the electors at the election did not state the amount of the indebtedness to which they were assenting, and for that reason the election was invalid.

Third. The ordinance providing for the submission of the question of the issuance of the bonds to the voters, did not limit the purpose of the indebtedness to a single purpose or object, but provided that the indebtedness would be incurred and the bonds issued to provide money for building bridges, sewers, for lights, public ways, and other public improvements.

The incurrence of the proposed indebtedness being assented to by more than 2/3 of the qualified voters of the municipality, voting upon the proposition at the election, and $30,000.00 of the present indebtedness having been incurred for school purposes, and at least $150,000.00 of it having been incurred before the adoption of the Constitution, the only question for decision, arising under sections 157 and 158 of the Constitution, is whether the city is authorized, under the latter section, to incur an additional indebtedness, that already existing being in excess of five per centum of the value of the taxable property of the city, estimated by the assessment, "next before the last assessment, previous to the incurring of the indebtedness." Section 158, *supra,* is as follows: "The respective cities, towns, counties, taxing districts and municipalities shall not be authorized or permitted to incur indebtedness to an amount including existing indebtedness, in the aggregate exceeding the following named maximum percentages on the value of the taxable property therein, to be estimated by the assessment, next before the last assessment previous to the incurring of the indebtedness, viz.: Cities of the first and second classes and of the third class having a population exceeding 15,000, ten per centum; cities of the third class having a population of less than 15,000 and cities and towns of the fourth class, 5 per centum; cities and towns of the fifth and sixth classes, three per centum; and counties, taxing districts and other municipalities, two per centum; provided any city, town, county, taxing district or other municipality may contract an indebtedness in excess of such limitations, when the same has been authorized under laws in force prior to the adoption of this Constitution, or when necessary for the completion of and payment for a public

improvement, undertaken and not completed and paid for at the time of the adoption of this Constitution, and, provided further, if at the time of the adoption of this Constitution the aggregate indebtedness bonded or floating, of any city, town, county, taxing district, or other municipality, including that which it has been or may be authorized to contract as herein provided, shall exceed the limit herein prescribed, then no such city or town shall be authorized or permitted to increase its indebtedness in an amount exceeding two per centum, and no such county, taxing district or other municipality, in an amount exceeding one per centum, in the aggregate upon the value of the taxable property therein, to be ascertained as herein provided, until the aggregate of its indebtedness shall have been reduced below the limit herein fixed, and thereafter it shall not exceed the limit, unless in case of emergency, the public health or safety should so require. Nothing herein shall prevent the issue of renewal bonds, or bonds to fund the floating indebtedness of any city, town, county, taxing district or other municipality.''

It will be observed that this section of the Constitution provides, that a city of the third class with a population of less than 15,000 persons, can not incur an indebtedness, which including existing indebtedness in the aggregate, is in excess of five per centum of the value of the taxable property of the city, estimated by the assessment of the property for taxation, ''next before the last assessment previous to the incurring of the indebtedness,'' unless at the time of the adoption of the Constitution the indebtedness of the city, bonded or floating, including that which it has been or may be authorized to contract as provided in section 158 exceeded five per centum of the assessed value of the taxable property, in which event the city may contract an additional indebtedness to the extent of two per centum of the assessed value of the taxable property estimated as heretofore stated. It will, also, be observed, that, if at the time of the adoption of the Constitution, the indebtedness exceeded five per centum of the value of the taxable property, and thereafter, the indebtedness is reduced to less than five per centum of the assessed value of the property, it cannot thereafter be allowed to exceed five per centum of the value of the property. It is readily apparent that the existing indebtedness of the city—$208,000.00—is in excess of five per centum of the

assessed value of the taxable property for either the
year 1918 or 1919, whichever may be adopted as the as-
sessment by which the estimate is to be made, and hence,
if the proposed indebtedness may be incurred, it must
appear, that the indebtedness, existing at the adoption
of the Constitution, was in excess of five per centum of
the value of the taxable property, and that such indebted-
ness has continued and maintained such excess, con-
tinuously since that time, and if so, an additional in-
debtedness equal to two per centum of the value of the
taxable property may be incurred, under the provisions
of the section of the Constitution, *supra*. This construc-
tion of the section of the Constitution, *supra,* is mani-
festly correct, because it mandatorily provides, that
such a municipality can not add to its indebtedness, so
that the aggregate thereof is in excess of five per centum
of the value of its taxable property, if at the adoption
of the Constitution its debts were less in the aggregate
than that per centum of the assessed value of the prop-
erty; and although at the adoption of the Constitution,
the indebtedness was in excess of five per centum of the
assessed value of the taxable property, if it should
thereafter be reduced below that per centum, it can not
thereafter be increased in excess thereof. Hence, if the
appellant claiming that the incurrence of the proposed
indebtedness is void, because in violation of section 158
of the Constitution, should show, that the indebtedness
of the city was at any time, since the adoption of the
Constitution, less in the aggregate than five per centum
of the value of its taxable property, estimated as re-
quired by the Constitution, it would be fatal to the in-
currence of the proposed indebtedness. Assuming that
the assessed value of the property for the year 1891, at
the adoption of the Constitution, was $4,000,000.00, and
for each year thereafter, up to and including the year
1919, was not in excess of $3,250,000, and that the bond-
ed indebtedness at the adoption of the Constitution was
$150,000.00, and the floating indebtedness was $80,000.00
and the latter item of indebtedness so existed until 1896,
when it was refunded in bonds to the amount of $60,-
000.00, and $28,000.00 of the latter sum has existed
during every year since 1896, a calculation demonstrates
that the indebtedness, at the adoption of the Constitu-
tion, exceeded five per centum of the assessed value of
the taxable property for the year in which the Constitu-

tion was adopted, and the indebtedness then existing and continuing until the present time, has exceeded five per centum of the value of the taxable property for each year since the Constitution was adopted, and hence the municipality is authorized to incur additional indebtedness not exceeding two per centum of the value of the taxable property estimated by the assessment made next before the last assessment previous to the incurring of the indebtedness. It is, however, not overlooked, that it is averred in the petition that on·account of loss and mislaying of records, the value of the property assessed for taxation for the years 1891, 1892 and 1893 can not be stated with certainty, nor can the amount of the floating indebtedness existing at the adoption of the Constitution in 1891, and during the years 1892 and 1893 be stated with certainty; but in as much as it is averred that in the absence of certain records, other sources of information were available, and have been relied upon, and that the sums stated are approximately correct, the pleading must be construed, when stating the value of the assessed property for those years as well as the then prevailing indebtedness, as giving substantially the correct sums. If this view should not be correct, the result would be the same as to the appellant. It will be presumed that the board of commissioners, when adopting the ordinance for the issual and sale of the bonds, and the imposition of the tax levy to pay their interest and to create a sinking fund to liquidate the principal at maturity, did not exceed its authority, and was acting within the constitutional rights of such a municipality, and one who attacks the ordinance upon the ground that it exceeds the constitutional limitations, must set out in his pleadings the facts which demonstrate the invalidity of the proceeding upon the alleged constitutional grounds. Southern Bitulithic Co. v. De Treville, et al., 156 Ky. 513; Morris v. Hoagland, 116 S. W. 687; Louisville v. Gosnell, 22 R. 1524; Frankfort v. Morgan, 33 R. 297; O'Bryan v. Owensboro, 24 K. L. R. 469. Hence, if appellant failed to aver the facts necessary to show the constitutional invalidity of the proceeding to create the indebtedness, the demurrer to his petition was properly sustained.

(b)   To determine whether the proposed additional indebtedness of $30,000.00 may be lawfully incurred, it is necessary to determine by which assessment of the

taxable property the estimate of percentage must be made. The constitution provides that the estimation of the percentage must be made "on the value of the taxable property therein to be estimated by the assessment next before the last assessment previous to the incurring of the indebtedness." The authority to create the indebtedness was granted as the result of the election held on November 4, 1919, under an ordinance submitting the matter to the qualified voters enacted theretofore. But the ordinance providing for the issual and sale of the bonds was not adopted until in November, 1920, and at the time of the institution of this action, the bonds had not been offered or sold, but the assessment of taxable property for the year 1920 had been completed. If the bonds are never sold nor delivered, no indebtedness can or will be incurred on their account. No contract of any kind will have been entered into that would create an indebtedness until the sale and delivery of the bonds. City of Louisville v. Parsons, 150 Ky., 424. Hence, the estimation of the percentage must be made by the assessment of 1919, which was $2,210,435.00, and two per centum of which is $44,208.00. The existing indebtedness which has been incurred since the adoption of the Constitution must be deducted from the two per centum of the value of the taxable property, assessed for the year 1919, to ascertain what sum of additional indebtedness may be incurred by the municipality. Warren v. Newport, 23 R. 1006; Holhauzer v. Newport, 94 Ky. 396; City of Lexington on appeal, 96 Ky. 260. This existing indebtedness consists of the $30,000.00 of bonds for school purposes issued in 1906 and 1911. Before deducting this sum from the two per centum of the value of the taxable property, the $19,000.00 in the sinking fund for the liquidation of the school bonds, should be deducted from their amount, which leaves the sum of existing indebtedness incurred since the adoption of the Constitution at the sum of $11,000.00. Kimberly v. Owensboro, 176 Ky. 535; O'Bryan v. Owensboro, 113 Ky. 680. When the $11,000.00 of existing indebtedness is deducted from the two per centum of the value of the property for 1919, it leaves a sum in excess of the additional $30,000.00 of indebtedness proposed to be incurred.

(c) The contention that the question printed upon the ballot at the election, and by which the issue as to the

proposed additional indebtedness was submitted to the voters, did not contain nor state the amount of the bonds proposed to be issued, and hence, did not authorize the creation of a debt, nor the issual of the bonds because presenting an issue so indefinite as to be incapable of intelligent action upon it, is not tenable. The question printed upon the ballot was "Are you in favor of the improvement bond issue?" The ordinance prescribed that this should be the question printed upon the ballot, and which the voter was called upon to answer. The ordinance, also provided that in the event 2/3 of the voters should assent to the bond issue, bonds were to be issued to the extent and in the amount authorized by law not exceeding $50,000.00, and a tax should be levied to pay the interest and to create a sinking fund to pay the principal. This ordinance was duly advertised by publication in a newspaper of general circulation, in the city on two different days preceding the election, and the voters must have understood that the indebtedness was proposed to be created to the extent and in the amount allowed by the constitutional limitations, and manifestly could not have been misled, nor failed to have understood the extent of debt proposed to be created, and besides, the amount was limited by the ordinance to $50,000.00. A similar question has recently been decided in Moores v. Board, etc., 189 Ky. 148, and in the older cases of Arbuckle v. McKinney, 30 K. L. R. 55; McGinnis v. Board of Trustees, 32 K. L. R. 1289. The reasoning and the principles of those cases, we think determine this question adversely to appellant's contention.

(d) The third objection urged to the validity of the proposed bond issue was, decided adversely to the contentions of appellant in Louisville v. Park Commissioners, 112 Ky. 409.

The judgment is therefore affirmed.