## Rohde v. City of Newport et al.

(Decided Dec. 13, 1932.)

BLAKELY & MURPHY for appellant.

L. W. SCOTT and CARL H. EBERT for appellee.

OPINION OF THE COURT BY JUDGE WILLIS—Reversing.

Newport is a city of the second class operating under the commission form of government. The board of commissioners, in April, 1932, adopted an ordinance to authorize the funding of an indebtedness of $125,000 evidenced by notes, judgments, and claims against the city. The ordinance was regular in form and strictly in accordance with the statutes regulating the subject-matter. Before the bonds were issued, and on the day before chapter 22 of the Acts of 1932 became effective, R. J. Rohde, a taxpayer of the city, sued to obtain a declaration of rights and to enjoin the issuance of the bonds. He asserted in his pleadings that the indebtedness proposed to be funded was legally incurred and valid in all respects, but he did not set forth the particulars concerning it. He attacked the ordinance on several grounds, with all of which the city took issue. On final hearing the petition was dismissed, and the bonds were adjudged valid. The taxpayer has prosecuted an appeal. It is conceded that the judgment of the circuit court was correct, unless chapter 22 of the Acts of 1932 applies, and the validity and application of that act are the only questions argued for the appellant.

That act provided, in substance, that it should be unlawful for any board of trustees or city council to issue or offer for sale any bond or obligation until the issuance thereof had been approved by a court of competent jurisdiction, declaring such bonds to be based upon and designed to cover an indebtedness within the limits of the Constitution. It further provided that the city should affirmatively show by pleading and proof that the proposed bond issue was within the constitutional limitations, and required an appropriate pleading setting forth "each and every item of indebtedness created and existing, or unpaid and owing" by the city during the period of time in which the indebtedness proposed to be bonded was created. In Fox v. Boyle County, 245 Ky. 27, 53 S. W. (2d) 192, we con-

strued the statute to require merely the ascertainment and declaration by the court whether the proposed bond issue was constitutional, and, when so construed, uphelp its validity. It is now argued that the act is not retroactive and has no application to the present action instituted before the act became effective. It appears also that the debts to be funded were contracted by the city, and the funding ordinance was adopted by the commissioners before June 15, 1932, when the act went into effect. The act is further assailed as invalid on the ground that it attempts to confer nonjudicial functions upon the court, and infringes the vested right of the city to issue and to market funding bonds for a valid debt.

The act is not retroactive, and, if the proposed bonds had been issued and sold before it became effective, it would not affect their validity. 12 C. J. sec. 82, p. 722. But the bonds are yet to be issued and offered for sale, and no indebtedness is incurred until the sale and delivery of the bonds is completed. Bosworth v. City of Middlesboro, 190 Ky. 253, 227 S. W. 170; Vaughn v. City of Corbin, 217 Ky. 521, 289 S. W. 1104. The act forbids the city from issuing or offering for sale any bond until its constitutional validity has been determined by a court of competent jurisdiction. The judgment in this case goes further than a mere dismissal of the action. It expressly adjudges that the proposed bonds are legal and valid obligations of the city. It manifests an approval of the court, and would be sufficient but for one difficulty. The difficulty is that neither the pleading nor the proof complied with the procedural provisions requiring "each and every item of indebtedness" to be established. The recitals in the ordinance and the allegations in the pleadings merely describe the debts as "notes, judgments and claims." The facts concerning each item involved, manifesting its validity under the Constitution, should be made to appear, in order to enable the court to determine the question. Hence the judgment is erroneous in declaring the validity of the proposed bond issue without adequate pleading and proof, if the act is valid as applied to the situation presented. As already pointed out, the effect of the act is merely to require a judicial determination in advance of a sale of the bonds that the debts to be funded are valid and within the constitutional limitations. In the light of that construction there is no room

for the contention that the statute attempts to confer upon a court functions of a nonjudicial character. It requires merely that the adjudication must precede a sale. The determination and declaration of the constitutional validity of an act is essentially and exclusively a judicial function. 12 C. J. sec. 40, p. 699; 12 C. J. sec. 205, p. 775; 12 C. J. 248, p. 813; 15 C. J. sec. 13, p. 723; 2 Bouv, Law Dict. 1740 (Rawle's 3d Rev.); Black v. Elkhorn Coal Corporation, 233 Ky. 588, 26 S. W. (2d) 481.

It is the distinctive nature of judicial power to determine rights and obligations with reference to transactions that are past, or concerning conditions that exist at the time of the exercise of the power, 12 C. J. p. 807, sec. 239.

The validity of proposed action, affecting the substantial rights of the parties, asserted under a provision of the Constitution, is perhaps the most typical illustration and the most distinctive instance of the nature of judicial power. Osborn v. Bank, 9 Wheat, 738, 6 L. Ed. 204; Muskrat v. U. S. 219 U. S. 346, 31 S. Ct. 250, 55 L. Ed. 246.

"Judicial power" says Mr. Justice Miller, in his work on the Constitution of the United States (page 314),

"is the power of a court to decide and pronounce a judgment and carry it into effect between persons and parties who bring a case before it for decision."

"A case is a suit in law or equity, instituted according to the regular course of judicial proceedings."

2 Story on the Constitution, sec. 1646; Osborn v. U. S. Bank, 9 Wheat, 738, 6 L. Ed. 204; Pacific Whaling Co. v. U. S., 187 U. S. 447, 23 S. Ct. 154, 47 L. Ed. 253; Smith v. Adams, 130 U. S. 167, 9 S. Ct. 566, 32 L. Ed. 895; In re Pacific Ry. Com. (C. C.) 32 F. 241. It must present a justiciable issue in such form that the judicial power is capable of acting upon it. The books abound with cases in which the courts have dealt with the validity of bond issues assailed as violative of constitutional limitations, and our own reports constitute no exception. Certainly there can be no doubt of the power of the court at the suit of a proper party, to pronounce judgment upon the validity of a proposed bond issue under the statute, or apart from it. The statute will not be so construed as to embrace an attempt to con-

fer on the court powers of a nonjudicial nature. Fox v. Boyle County, 245 Ky. 27, 53 S. W. (2d) 192. Such construction would render the act invalid, since 'our Constitution forbids the imposition of nonjudicial powers upon our judicial tribunals. Const. secs. 27, 28. Anway v. Grand Rapids R. R. Co., 211 Mich. 592, 179 N. W. 350, 12 A. L. R. 26; Muskrat v. U. S., 219 U. S. 346, 31 S. Ct. 250, 55 L. Ed. 246; Black v. Elkhorn Coal Corporation, 233 Ky. 588, 26 S. W. (2d) 481; Jefferson County v. Chilton, 236 Ky. 614, 33 S. W. (2d) 601.

The Legislature possesses power to prescribe the form and manner to be pursued by governmental subdivisions in the issuance and sale of bonds, so long as the right and power to pay its debts are not curtailed or destroyed. The constitutional provisions may not be invoked to avoid new liabilities imposed, or additional restrictions prescribed, by the General Assembly, for municipal corporations in the performance of their governmental functions. 12 C. J. p. 1087; 12 C. J. p. 1149; Guthrie National Bank v. Guthrie, 173 U. S. 528, 19 S. Ct. 513, 43 L. Ed. 796. The reason for the distinction is clearly expounded by the Supreme Court of the United States in the case of Atkin v. Kansas, 191 U. S. 207, 24 S. Ct. 124, 126, 48 L. Ed. 148, where it was said:

"These questions—indeed, the entire argument of defendant's counsel—seem to attach too little consequence to the relation existing between a state and its municipal corporations. Such corporations are the creatures—mere political subdivisions—of the state, for the purpose of exercising a part of its powers. They may exert only such powers as are expressly granted to them, or such as may be necessarily implied from those granted. What they lawfully do of a public character is done under the sanction of the state. They are, in every essential sense, only auxiliaries of the state for the purposes of local government. They may be created, or, having been created, their powers may be restricted or enlarged or altogether withdrawn at the will of the legislature; the authority of the legislature, when restricting or withdrawing such powers, being subject only to the fundamental condition that the collective and individual rights of the people of the municipality shall not thereby be destroyed."

The right of the city to issue bonds to fund a valid debt is not denied or impaired. An additional step in

procedure is required in order to assure the validity of the act and to require obedience to the constitutional limitations. The power of the city to pay or to fund its valid debts is not affected, but the procedure for issuing bonds is regulated.

The city is not now, and has never had, any right to contract a debt in violation of the Constitution (see sections 157, 158). Prior to the act of 1932, the burden was on the party who challenged the validity of the proposed bond issue to manifest facts sufficient to justify the relief sought. Davis v. City of Newport, 239 Ky. 610, 40 S. W. (2d) 281. The new procedure merely requires a judicial determination of constitutional validity in advance of the issue and sale of the securities, and puts the burden of pleading and proof on the city. Fox v. Boyle County, supra. Hence it was within the power of the General Assembly to require such a step to be taken, and to regulate the procedure, and the act applies to all bonds issued or sold after it became effective. It was remedial in character (12 C. J. 974), was addressed to a governmental subdivision, and, as construed by the court, did not offend any provisions of the Constitution.

It will be easy for the city to amend its pleading to comply with the act, and upon return of this case an amendment may be filed and the facts exhibited respecting the debts to be funded so that an appropriate judgment of the court may be obtained in the present action.

Judgment reversed, for procedure not inconsistent herewith.

Whole court sitting.