## Stratton v. Jessamine County.

(Decided Dec. 21, 1934.)

R. L. BRONAUGH for appellant.

JOHN NOLAND and JOHN C. WATTS for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Jessamine county filed this action in the circuit court for the county against C. M. Stratton, one of its citizens and taxpayers, under the provisions of section 186c-7 of the 1933 Supplement to Carroll's Kentucky Statutes, which is a part of chapter 22, p. 124, of the Session Acts for 1932. The petition averred that the assessed valuation of the property in the county for local taxation amounted in the year 1932 to $13,021,757; for the year 1933, $11,954,207; and for the year 1934, $10,590,628. It also set out the amount of the outstanding bonded indebtedness of the county, as well as the deficits in the revenue for those three years and for the amount of which county warrants had been issued, and which were—for the year 1932, $11,023.31; for the year

1933, $30,677.20; and for the year 1934 up to July 1st, $8,620.29.

To obtain a judgment of the court permitting and authorizing the county through its fiscal court to issue its bonds, without a vote of the people therefor, for the aggregate amount of such deficits, as represented by outstanding warrants, this action was brought pursuant to the section of the Statutes, supra, and its preceding one, section 186c-6. The defendant, whom the plaintiff named in its petition, made somewhat of a feeble defense, not even demurring to the petition, and his answer was so framed as to make it exceedingly doubtful if he put in issue the validity of the various items composing the deficit for each year, and for which the warrants were issued. In order for such items of expenditure to be valid two facts must concur, i. e., (a) that the purpose for which the expenditure was agreed to be made was an obligation that the county had the right to assume and perform, and (b) that each particular expenditure, at the time the county assumed it and became obligated therefor, did not exceed the revenue provided for the year in which the obligation was incurred.

The petition did not allege, nor was it attempted to be shown by the evidence introduced, whether or not the county (by its fiscal court) levied for any of the years involved the maximum rate allowed by section 157 of the Constitution; but, under an unbroken line of opinions of this court, its fiscal court might in good faith anticipate what the revenue of the county would be as based on the assessment for that year with a levy at the maximum rate, and expend the difference between what that rate would produce and what was produced by the lower levy rate that was actually made. But in order for the obligations composing the deficit to be valid in any event, it must appear, not only that the items composing it were for expenditures that the county could legally make, but, in addition thereto, that the revenue that was actually collected and spent for the particular year was likewise done for such lawful purposes; for, if it were not so, then the deficit for that year would be correspondingly increased and to the extent of any such unlawful expenditure of revenues actually collected, if any, the deficit for that year would be unauthorized.

Neither allegation nor proof appears in the record relating to such matters. It does appear, however, that

for the year 1932 the county under a maximum levy rate (with other sources of revenue) would have realized a total sum of $70,510.73; for the year 1933, $64,448.90, and for the year 1934 the amount would have been $60,431.40. Deducting from those sums the warrants issued for those respective years (the total aggregate of which is sought to be funded by the issuing of the bonds of the county), there is left in the treasury of the county, and which is to be presumed was collected and spent for each of those years, $59,487.42 for the year 1932; $33,781.70 for the year 1933; and $51,811.11 for the year 1934. Whether these latter amounts were or were not expended in discharge of legal obligations of the county nowhere appears in the record. We, therefore, conclude that the county failed to manifest a case authorizing the court's approval of the proposed bond issue to the amount of $50,000, which the fiscal court submitted in its resolution therefor.

We deem it proper to also say that the evidence offered to establish the validity of county expenditures in actions like this should be more definite than a general statement by the witness that the aggregate amounts therefor made by the county against the revenue of any particular year "were and are valid," or to answer in such general terms that the items composing it were valid at the time they were incurred. More definite facts should be given so as to furnish the court some proper data upon which it may act, other than upon such mere conclusion statements. This may be accomplished by classifying the items, followed by a statement of the purpose for which they collectively were contracted or paid, without directing the testimony to each separate distinct item. The sections of the Statutes, supra, were enacted in order to curb a reckless disposition on the part of some fiscal courts of the various counties of the commonwealth, and to further guarantee that they confine the expenditures of their counties within constitutional limits, and nothing less than a good faith substantial compliance therewith should be approved. An analogous recent case is that of Randolph v. Shelby County, 257 Ky. 297, 77 S. W. (2d) 961. At the close of that opinion we said: "However, in view of the fact that valuable rights of the public are involved, final judgment disapproving the issuance of bonds for road and general purposes will not be rendered, but the case will be remanded for

the purpose of giving the county an opportunity, if it so desires, to offer evidence establishing the validity of those items of indebtedness," and which course we direct in this case.

Wherefore, the judgment is reversed, with directions to set it aside and for further proceedings consistent with this opinion.

The whole court sitting.