## Shearin v. Ballard County.

(Decided Jan. 12, 1937.)

NOYL B. ROGERS for appellant.

H. H. LOVETT for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The Ballard County Fiscal Court has ordered the issuance of 5¾ per cent. bonds to the amount of $47,000 to fund its floating debt. This suit has been brought pursuant to the statutes requiring the validation of such

bonds by proving the legality of the debts being funded and that they are within the constitutional limitation. Sections 186c-6, 186c-7, Kentucky Statutes Supp. 1933.

The present indebtedness of the county consists of a balance of $125,000 of a bond issue authorized by the vote of the citizens and of $44,000 of an issue funding a floating debt. The present assessed valuation of the property is $6,672,054, so that the constitutional limitation of 2 per cent. of such valuation is $135,241. The present outstanding open accounts and unpaid judgments proposed to be funded amount to $46,833.89. So the total indebtedness is $215,833, or $80,592 in excess of the limit fixed by the Constitution. There is nothing in the evidence showing that the $125,000 of outstanding bonds were issued for roads and bridges under the authority of section 157a of the Constitution, but it is inferable from the petition that such is the case. If that is so, the limitation of 2 per cent. prescribed by section 158 of the Constitution is not applicable to it; hence the entire indebtedness is not excessive. Bird v. Wilson, 171 Ky. 807, 188 S. W. 899. But this is not proven. The petition of the county against a taxpayer filed a statement of the outstanding and unpaid warrants. It shows the date issued, name of payee, the number and amount of each warrant. The total warrants against the general fund are $29,547.35, with interest of $6,456.76 added, and against the road and bridge fund $9,228.59, plus $1,601.19 interest. The aggregate floating debt is, therefore, $46,833.89. The resolution directing the issuance of the funding bonds states that judgments had been rendered against the county on some of the warrants listed "and other evidences of debt." However, the pleading and proof are confined to the warrants. No warrants dated after 1934 are listed. There is no evidence that any of these warrants was issued for an obligation which the county could legally incur. Nor is it shown that, when any of them was issued, the county had not already become indebted in an amount exceeding the income and revenue provided for that year. Section 157, Constitution of Kentucky; section 186c-6, 186c-7, Kentucky Statutes Supp. 1933. The county judge testified as to each year that the expenditures were less than the revenue except that in 1928 the expenditures exceeded the revenue "which the county provided or might

have provided" by $6.50, which was for governmental expenses. But the statement filed with the petition contains warrants issued in 1928 aggregating $1,772.75. He testified that for 1929 the county had "quite a surplus." For 1930, the surplus was $23.95; for 1931, it was $14,776.11; for 1932, it was $14,000; for 1933, it was $141.57; and for 1934, it was $5.86. An explanation is attempted, but we cannot understand from it or otherwise how, with a surplus each year, warrants for each year are unpaid and a debt has accumulated in the principal sum of $38,775.94. It may be conjectured that this represents a floating debt incurred prior to 1928, which was satisfied during this period by the application of current revenues of the period.

The county judge also testified as to the amount of "anticipated revenue" and the portion thereof that was not collected in each of the years from 1928 to 1934, both inclusive. The amount of "anticipated revenue" seems to be merely an estimate based upon the previous year's collections. The controlling figure is what sum was "income and revenue provided"; that is, what it could have been within the constitutional limitations. That is now capable of exact computation. The aggregate of the "actual revenue" for the period is given as $346,711.56 and the total expenditures as $348,157.33, or an excess of only $1,445.77. He stated that the expenditures for those years were under the anticipated revenue by $37,764.39. The total "anticipated revenue" is given by a deputy county court clerk as $385,921.72. The county judge recapitulated the tax losses, or sums of "anticipated revenue" not collected, as $48,083.43, and pointed out that that sum is more than the amount of unpaid warrants to be funded. Our recapitulation of the items given by him, however, is only $38,466.79. The tax assessment for three of the seven years embraced by the evidence is given, but the tax levy for no year is stated. The so-called "anticipated revenue" for each of the three years for which the total assessed valuation is shown is much in excess of that which would be raised by the constitutional limit of a 50-cent rate. Doubtless, the difference is covered in part by a special levy for the outstanding bonds, but it is not so proven.

We cannot regard this record as meeting the requirements for establishing the validity of the debt to be covered by the proposed issue of bonds. See among

many cases Stratton v. Jessamine County, 257 Ky. 302, 77 S. W. (2d) 955; Randolph v. Shelby County, 257 Ky. 297, 77 S. W. (2d) 961; Ballard v. Adair County, 264 Ky. 490, 95 S. W. (2d) 18; Harrison v. Roberts, 264 Ky. 62, 94 S. W. (2d) 296.

The judgment is reversed and the case remanded for the purpose of giving the parties an opportunity, if they so desire, of proving the legality of the debts proposed to be funded.