## Hockley v. Carter County.

(Decided Feb. 12, 1937.)

D. V. KIBBY for appellant.

J. R. McGILL and H. R. WILHOIT for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

This action was filed in the Carter circuit court by Carter County against the appellant and defendant below, G. F. Hockley, a citizen and taxpayer therein (pursuant to the provisions of section 186c-6 et seq. of our Statutes), to obtain the approval of the circuit court of a proposition by the fiscal court of the county to issue its bonds in the sum of $62,000 with the proceeds of which to fund that amount of floating indebtedness evidenced by warrants of the county, some of which extend as far back as the year 1923, but the great bulk of which was created during and following the fiscal year

of 1928 and extending up to January 1, 1936. The circuit court approved the issue, and the defendant in his own right and that of other taxpayers of the county prosecutes this appeal.

We have held in cases, too numerous to mention, that no item of indebtedness of a county or any subdivision of the state government is valid if at the time it was contracted the revenue provided for the taxing unit or subdivision of the state for that year was or would be exceeded in making the particular contract creating the indebtedness. It also has been held by this court that the revenue "provided" is that which might be produced by the levying of a tax to the maximum amount that the particular taxing unit could make. Therefore, whether an item of indebtedness contracted in any particular year was or not valid at the time it was created is necessarily and almost entirely dependent upon the amount of assessable property for the particular year, multiplied by the rate of tax that the taxing unit could levy, plus the permissible poll tax that could be levied and plus also other legitimate sources of revenue, if any. Three late cases, pointing out the necessary facts to be alleged and proved by the taxing unit proposing the bond issue, are Randolph v. Shelby County, 257 Ky. 297, 77 S. W. (2d) 961; Stratton v. Jessamine County, 257 Ky. 302, 77 S. W. (2d) 955, and Shearin v. Ballard Co., — Ky. —, 100 S. W. (2d) 836, decided Jan. 12, 1937. The reasoning employed and the principles announced in those opinions will not be repeated here but may be obtained from the opinions themselves. Aside from the year 1935, and possibly 1934, there is no testimony in the record as to the amount of assessable property in Carter County for any of the years covered by the creation of the indebtedness sought to be bonded in this case. Therefore there is nothing in the record to show what a levy of the maximum constitutional rate would have produced for any of those years. The development of the omitted fact referred to lies at the very foundation of the inquiry as to the validity of the various listed items of indebtedness produced and filed with the record.

But it is argued that necessary governmental expenses of the taxing unit, including salaries of its officers, are not to be taken into consideration in determ-

ining whether or not the limitation of indebtedness prescribed in section 157 of the Constitution has been exceeded, and in support of that proposition counsel cite and rely on the cases of Breathitt County v. Cockrell, 250 Ky. 743, 63 S. W. (2d) 920, 92 A. L. R. 626; Rohde v. City of Newport, 246 Ky. 476, 55 S. W. (2d) 368, and Russell County Fiscal Court v. Russell County, 246 Ky. 529, 55 S. W. (2d) 337. But we do not interpret those opinions as do counsel for the county. Those cases simply hold that a particular item of indebtedness of such subordinate taxing units for a strictly governmental purpose would not be invalid, although it, plus other expenditures not strictly governmental, for the particular year, would exceed the amount prescribed in section 157 of the Constitution. But it does not follow that, after all such necessary and strictly governmental expenses are met, the taxing unit may expend in addition thereto whatever revenue that may have or could have been provided for that particular year by its tax levying authority. In other words, the revenue provided for and collected for any particular year must first take care of all such necessary governmental expenses, and, when that is done, all other expenses that are not absolutely necessary governmental expenses should be dispensed with if there is not sufficient revenue for incurring them. Whether or not the various warrants listed in this case were within or above the amount that could have been levied by the county and the amount that would have thereby been produced after deducting necessary governmental expenses is nowhere shown, and especially is that true as to all of the years, except the first two above mentioned.

Not only is it the duty of county fiscal courts, as well as that of other taxing authorities in other governmental units, to observe the constitutional limits against the incurring of indebtedness, but our Legislature has enacted various statutes looking to a compulsory observation of such requirements—one of which is the statute under which this proceeding was inaugurated. Another one is section 4281u-4 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes, and a third one is our enactment commonly known as the "County Budget" Statutes. If the fiscal authorities of such governmental units when confronted with the propriety of making a particular expenditure would inves-

tigate its financial affairs so as to determine whether or not the proposed indebtedness would exceed the amount that might be expended in any one year, according to the principle above set out and reiterated in numerous prior opinions of this court, it would no doubt result in the saving to the taxpayers therein of considerable sums of money, and also relieve such unit of future embarrassment in trying to take care of them, as well as protect the holders of such claims or warrants from total loss if it should turn out that the claim was invalid because exceeding the revenue provided for the year. What we have above stated is, we repeat, what we have uniformly held on every occasion when the question was presented to us, and we cannot depart therefrom in this or any other similar case, howsoever much it might relieve the particular taxing unit of excess interest rates, or beneficial to it in any other manner or direction.

Our observation, obtained from similar cases brought to this court, has demonstrated the fact that fiscal authorities in such taxing units are frequently the victims of high-powered salesmen and are thereby led into purchasing machinery and other alleged beneficial utilities that could be easily dispensed with, and for which no absolute necessity existed, and that such fact is frequently the cause of shortage in revenue. Conspicuous activities of other high-powered agencies render friendly assistance to such funding propositions. They consist of organized and completely equipped systems whereby the fiscal authorities of such taxing units are persuaded to issue its bonds to take care of alleged legitimate floating indebtedness, so that profitable investments may be made in purchasing the bonds. Such prospective purchasers volunteer and perform legal services whereby the ultimate result of a bond issue is obtained, and which includes preparation of actions of the nature of this one and conducting them through the courts. A friendly, if not an interested, attitude is thereby created, and the taxpayer upon whose shoulders rests the ultimate burden of paying the bonds with interest is frequently scarcely represented at all. Therefore the necessity for the courts to scrutinize closely this character of proceedings, and to see to it that the protecting barriers, erected by the Constitution and the Statutes, supra, are at least substantially complied with.

It may be true that at the time each and every item of indebtedness involved in this case was created it was not in excess of the constitutional provisions supra, as relating to Carter County; but the statute under which the action was brought cast the burden upon the county to prove such to be the fact, and we are not authorized to give our approval to any circumvention of that requirement. It is frankly admitted by the deputy county court clerk, by whom the necessary facts were attempted to be proven, that he was unable to state whether or not each item of indebtedness was valid at the time it was created when asked that specific question. However, the matter would have been considerably elucidated if the sources of revenue had been given for the particular years in which the various items of indebtedness sought to be bonded, and for which warrants were issued, had been shown.

It results that under the proof as so adduced the court erroneously approved the proposed bond issue, and for which reason the judgment is reversed, but with the privilege of the county supplying the omitted proof, as above pointed out, if it can, and if it sees proper to do so.