## Hockley v. Carter County.

(Decided Nov. 12, 1937.)

D. V. KIBBEY for appellant.

J. R. McGILL and ALFRED HOLMAN for appellee.

OPINION OF THE COURT BY JUDGE STITES—Affirming.

This is the second appeal of this case. See Hock-

ley v. Carter County, 267 Ky. 250, 101 S. W. (2d) 928. This proceeding was brought pursuant to section 186c-6 et seq. of the Statutes to obtain the approval of funding bonds of the face value of $62,000, bearing interest at the rate of 5½ per cent. per annum, to take care of a like amount of outstanding floating indebtedness of the county extending back over a period of some years, and represented by 6 per cent. county warrants. On the previous appeal of this case, it was held that the county had failed to establish the validity of the various items of indebtedness sought to be funded, and we therefore withheld our approval of the bond issue. On the return of the case to the circuit court, additional proof was introduced, as suggested in our former opinion.

The loss in collections for each of the years from 1928 through 1935, from failures in the revenue, was established to be $27,076.70. During the same period, the failure of the county fiscal authorities to levy the full amount of the authorized poll tax was shown to be $16,716.50. These two items alone aggregated $43,793.20. The chancellor was of the opinion that the proof was sufficient to establish the validity of the outstanding floating indebtedness in the sum of $43,793.20, and that interest on this sum to date, being likewise a valid obligation of the county, could also be funded, and he approved the issuance of bonds in the principal sum of $54,303.57, but refused to approve the full amount of the proposed issue. The taxpayer has appealed, but no cross-appeal has been prosecuted by the county. We therefore confine our investigation to the propriety of the judgment in so far as it approves the issuance of bonds for $54,303.57.

It is earnestly argued by appellee that the chancellor erred in refusing to consider the anticipated revenue of the county to be the full amount of the assessed property figured at the full rate, and that commissions paid to the sheriff for the collection of the taxes should not be counted. The argument is apparently based on the idea that we should assume that the sheriff might waive his right to the commissions and collect the taxes free of charge for the county. We might with equal propriety assume that the county judge or any other official would waive his salary. The sheriff's commissions are no less a part of the general expense of the county than are these other items.

While the proof before us indicates that the county has not exceeded the debt limitations prescribed by section 158 of the Constitution, it does appear that there are already outstanding funding bonds issued in 1928, in the principal sum of $75,000, and, so far as this record shows, there has been no attempt to create a sinking fund for the purpose of meeting those obligations, although such a fund has been set up to cover outstanding road and bridge bonds.

The interest rate fixed on the bonds before us is higher than usually provided in similar issues from other counties. No doubt the failure of the county to provide a proper sinking fund for the bonds already issued explains, to some extent, why it must pay a higher rate of interest. Certainly, the saving of only one-half of 1 per cent. on an issue of bonds the size of the one before us is so negligible as to lend color to the suspicion expressed on the former appeal of this case that the bonds were proposed for the benefit of those who intend to sell them, rather than for the benefit of the county. It would be well for persons interested in making a profit from the sale of these and similar securities to pay some attention to the amortization provisions after the bonds are put on the market. The apparent predicament of the holders of the funding bonds issued by appellee in 1928 furnishes an excellent example of the failure of persons concerned in the issuance of bonds to pay any attention to them after they have been placed in the hands of unwary investors.

The proof in the record before us has supplemented the defects pointed out on the previous appeal, and it now appears that, to the extent found by the chancellor, the debts sought to be funded are valid within the limitations of sections 157 and 158 of the Constitution as construed by this court. No other question is presented.

Judgment affirmed.