## Wells et al. v. Pendleton County et al.

June 21, 1940.

J. C. Dedman, Judge.

Woodward, Dawson & Hobson and Franklin P. Hays for appellant Wells.

Hubert Meredith, Attorney General, and A. E. Funk, Assistant Attorney General, for appellant Reeves.

W. Marvin Davis for appellees.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Reversing.

The appellees, the fiscal court of Pendleton County and the Pendleton County Bridge Corporation, instituted this action against the appellants, Chester Wells, individually and as a taxpayer representing all citizens and taxpayers of Pendleton County, and Clyde Reeves, Commissioner of Revenue of Kentucky, under the Declaratory Judgment Act, Civil Code of Practice, Section 639a—1 et seq., for the purpose of testing the validity of a transaction between the county and the Pendleton County Bridge Corporation, hereinafter referred to as the corporation, concerning the construction and renting of a bridge.

The county owned and maintained a wooden bridge over South Licking River constructed in 1869 at Morgan, Ky., which has been condemned as unsafe. The bridge is in such condition that only light loads are permitted to cross it and it is guarded by a watchman during the day and locked by gates at night. School buses are not allowed to cross it and the number of school children permitted to walk over the bridge is limited to groups containing not more than eight or ten. Not being in financial shape to construct a new bridge, the county conveyed the present one and its approaches to the corporation, a non-stock and non-profit legal entity, having power to acquire a bridge site, construct a bridge and operate same in Pendleton County, Kentucky.

Section 4356z-14 et seq., Ky. Stats., Baldwin's 1940 Supplement, (an act of 1940), authorizes the corporation to accept a conveyance from the county, construct a bridge under plans approved by the fiscal court and by the corporation. Upon completion of the bridge, the fiscal court is authorized to lease it from the corporation for a term of one year with the option to renew the lease from year to year, not exceeding 50 years, at a yearly rental sufficient to retire the bonds and interest, and to pay all expenses of the corporation within the number of years for which the lease is renewed; at the end of which period the bridge becomes the property of

the county. The county shall provide the means of approach to the bridge and shall grant a franchise to the corporation to operate same, but the county has the obligation of maintaining the bridge and the appurtenances thereto out of the county road fund. The corporation is authorized by the act to issue tax exempt bonds not in excess of $50,000 which shall mature over a period not exceeding 50 years, with an interest rate of not more than 6%, which bonds are payable solely from the fund derived from the rental of the bridge and shall not constitute an indebtedness of the county.

The act gives the bondholders a lien on the property and provides they "may by legal action compel the performance of all duties required by this Act, including the making and collecting of sufficient levies to pay rent to the corporation, and the segregation of revenue and application thereof. * * * The fiscal court shall in its annual budget and levy provide within the constitutional limitation for the payment of rent for property leased under this Act, which shall be considered an ordinary expense of the county." Sections 4356z-23, 4356z-25. Before the articles of incorporation are filed the same shall be submitted to the Department of Revenue for approval and examination by the Commissioner of Revenue, and no bonds shall be issued except upon the approval of the Commissioner. It is provided the act shall be invalid and have no force or effect after January 1, 1941.

Upon accepting the deed, the corporation executed a lease to the county for one year from May 1, 1940, whereby it rented the bridge to be constructed to the county for $3,750. In addition to this rent, the county agreed to pay the maintenance, repairs and insurance on the bridge; it also agreed to refund any taxes exacted of the bondholders. The lease gives the county the exclusive option of renewing the rental contract from year to year, not to exceed eighteen additional years, and provides that the county shall have a second lien on the property for the amount of rent it pays, and at the end of the rental period the bridge becomes the property of the county. In case of default by the county in the payment of the rent, the lease provides the bondholders may operate the property as a toll bridge; or they may foreclose their lien, with the purchaser acquiring a fee-simple title to the bridge.

The judgment of the chancellor upheld the validity of the act and approved the conveyance of the bridge to the corporation and its construction of the new bridge and its leasing same to the county. The taxpayer and the Commissioner of Revenue appeal.

The pleadings raise several questions as to the validity of the act, but it is not necessary to decide them and we expressly refrain from so doing. Admitting for the sake of argument that the act and the plans put into effect thereunder by the county and the corporation for the construction and renting of the bridge are valid, a question not decided and expressly reserved in this opinion, we find an insurmountable obstacle in the path of the county in Section 157 of our Constitution in the shape of the record as here presented.

The most important question in this case and the very foundation upon which the entire structure rests is whether or not the county has run afoul of Section 157 in that the $3,750 rental, the insurance, maintenance and repairs for 1940 will exceed the income and revenue for that year after meeting its necessary governmental expenses and other expenses payable out of its 1940 income and revenue. The only averments in the petition relating to the annual income and revenue of the county are:

"Plaintiffs state that the unencumbered anticipated revenue and income of Pendleton County, for the fiscal year July 1, 1939, to June 30, 1940, and for the fiscal year July 1, 1940, to June 30, 1941, which is available for the payment of rental under said Contract, Lease and Option for the year beginning May 2, 1940, is in excess of $3750 plus the amounts agreed to be paid by Pendleton County for insurance, maintenance, taxes, etc. Plaintiffs admit that the unencumbered anticipated revenue of the County for the period of one year beginning May 2, 1940, would not be sufficient to pay the interest and principal on said $50,000 of bonds if said $50,000 of bonds became due at the end of one year and the county was liable to pay the interest and all the principal on said bonds at said time."

The petition does not state the amount of the county's bonded indebtedness, or the annual interest thereon; nor does it give the floating indebtedness; the as-

sessed valuation of the county, its tax rate and its annual income; the county's annual essential governmental expenses and any other necessary annual expense. Nor is there any evidence or stipulation in the record covering these all-important facts. Mr. R. A. Thompson, the county court clerk, was asked upon cross-examination if the county will be able financially to renew the lease from year to year, and his reply was:

"Pendleton County has never defaulted in any of its obligations as far as the records show. An amount of $3,750 has already been set aside for the payment of the first year's rental which will come due and payable during the fiscal year July 1, 1940, to June 30, 1941, and judging from the revenue received by the county in past years, there is no question about it being financially able to renew this lease and to pay any other necessary expenses incident to the use or lease of the bridge the first year and each succeeding year."

Neither the allegations in the pleadings nor the proof place sufficient facts before the court to enable it to determine whether or not the annual income and revenue of the county for 1940 will allow it to meet this $3,750 rental and to pay its essential governmental expenses and other necessary expenses to be met this year without exceeding its income and revenue for 1940 and thereby violate Section 157. McCrocklin v. Nelson County, 174 Ky. 308, 192 S. W. 494; Nelson County v. McCrocklin, 175 Ky. 199, 194 S. W. 323; Stratton v. Jessamine County, 257 Ky. 302, 77 S. W. (2d) 955; Russell County Fiscal Court v. Russell County, 246 Ky. 529, 55 S. W. (2d) 337; Hockley v. Carter County, 267 Ky. 250, 101 S. W. (2d) 928; Ebert v. Board of Education of Newport, 277 Ky. 633, 126 S. W. (2d) 1111. This list of authorities could be augmented by numerous others, but that is unnecessary. The fact that the Ebert, Hockley, and Stratton cases, supra, deal with Sections 186c-6 and 186c-7 of the Statutes and relate to refunding bonds does not prevent them from being authoritative on what facts it is necessary to allege and prove in properly presenting to the court the question of whether or not the county's obligation will violate Section 157 of the Constitution. The fact that Thompson, the county court clerk, testified that $3,750 has already been set aside for the payment of the first year's rental is not at all per-

suasive or convincing that in doing so, the county has not violated Section 157.

As pointed out in Sizemore v. Clay County, 268 Ky. 712, 105 S. W. (2d) 841, if this rental, insurance, repairs and maintenance, in addition to the essential governmental and other necessary expenses of the county, should exceed the amount of the county's yearly income and revenue, a reduction of expenditures by the county will be necessary, else such excess will be void.

The judgment is reversed for proceedings not inconsistent with this opinion.